GEORGE W. SIMMONDS *vs.* JOHN E. HOLMES.

New Haven & Fairfield Cos., Jan. T., 1891. ANDREWS, C. J., CARPEN-
TER, LOOMIS, SEYMOUR and TORRANCE, Js.

It is provided by Gen. Statutes, § 3757, that "all dogs found doing or at-
tempting to do mischief, when not under the care of any person, may
be killed." In an action for the killing of the plaintiff's dog the de-
fendant set up as separate defenses, 1st, that the dog at the time was
doing mischief, and 2d, that he was a stray dog and running at large.
Held that, regarding the second defense as equivalent to an allegation
that the dog was not under the care of any person, yet as neither was
a good defense taken by itself and it required both taken together to
make a legal defense, the pleading was defective.
But that the defect was waived by the plaintiff's taking no exception to it.
It is not necessary to make a case of a dog doing mischief within the stat-
ute, that he should be attacking an animate object.
Nor that the mischief should be done, or attempted to be done, with his
teeth.
In the present case the dog was lying asleep upon a bed of young plants
in the defendant's garden and seriously injuring them. Held to be a
case of mischief within the meaning of the statute.
And held that the right to kill the dog was not affected by the considera-
tion of its value as compared with the value of the property destroyed
or injured.
Section 3755 of the General Statutes provides for a civil action and a crimi-
nal prosecution in the case of the killing of a registered dog, unless in
defense of life or property. Held not necessary to a justifiable killing
under section 3757 that the dog should be an unlicensed one.
Where an error in the charge of the court, which appeared in full in the
record, was assigned only as all the charge beginning with a certain

clause and ending with another, it was held not to be a sufficient assignment under the rule (Rules of Practice, ch. 14, sec. 1,) that the precise matters of error must be set forth.

[Argued January 23d—decided June 1st, 1891.]

ACTION for damages for the killing of the plaintiff's dog; brought to the Court of Common Pleas in Fairfield County. The court (*Perry, J.,*) having overruled the plaintiff's demurrer to a part of the defendant's defenses, the case was tried to the jury, who returned a verdict for the defendant.

The plaintiff appealed on the ground of errors in the charge of the court. The case is sufficiently stated in the opinion.

*J. C. Chamberlain,* for the appellant.

1. Whatever may be the proper construction of the statute under which the court undertook to charge the jury, the pleadings give no opportunity to examine it. No issue under that statute was raised by the pleadings, and no claim of counsel made in argument can raise such an issue, or justify a charge upon an issue not so raised. The third defense is the only one that raises the question of killing to prevent injury, and that states the common law defense only. The reply of the plaintiff met that defense and the requests to charge were based solely on that issue. The court had no right to charge the jury upon a defense not raised by the pleadings. Hilliard on New Trials, 367 ; *Wilcox* v. *Chicago, Mil. & St. Paul R. R. Co.;* 24 Minn., 209.

2. The charge is also wrong for the reason that no facts were claimed by the defendant that would justify any allusion to the statute, even if it is to be strictly construed. The utmost claimed by the defendant was " that this dog at the time he was shot was lying asleep upon a few lettuce plants." The fact that the dog was " out of the care of any person and doing or attempting to do mischief," was not in any way pleaded, claimed or proven, and no charge should have been given based upon those facts, as it is well settled law that a court should never charge a jury upon supposed

facts, which do not appear in a case and which neither party has attempted to prove, and in regard to which evidence would be inadmissible because at variance with any issue raised by the pleadings. *Ward* v. *Henry*, 19 Wis., 91; *Allen* v. *City of Chippewa Falls*, 52 id., 430; *Bower* v. *Earl*, 18 Mich., 367; *Harris* v. *Wilson*, 1 Wend., 511; *Hollister* v. *Johnson*, 4 id., 639.

3. The wrong is doubly apparent in this case, for § 3757, not having been pleaded by the defendant as a defense, there was no opportunity for the plaintiff to reply, under § 3755, that this was a registered dog, (a fact, though not put in issue or tried,) and therefore not to be killed unless in the protection of life or property. Had this statute been pleaded as a defense, there still would have been error in the charge, for the reason that § 3757, passed in 1875, is materially changed by § 3755, passed in 1880. These two statutes together must be construed to mean that only unregistered dogs doing or attempting to do mischief can be killed, following the strict letter of the statute, without any reference to what "any mischief" may mean.

4. If the statute is to be taken literally, and the charge of the court is correct, that "the amount of mischief is not made a matter of consequence by the statute; any mischief is enough," then it is unconstitutional, as it is unnecessarily authorizing the destruction of private property without reason and without recompense. Arbitrary destruction of private property can never be justified except under the exercise of the police power, and that power must be exercised to prevent a danger that is reasonably imminent; and the measure must not be more harsh in its operation than is reasonably necessary, or supposed to be necessary, to prevent such danger, and also must never be used as a pretext for the wanton destruction of property. *Austin* v. *Murray*, 16 Pick., 126; *In re Jacobs*, 33 Hun, 375; *S. C.*, 98 N. York, 98. Since the original passage of the act the status of the dog before the law, and his value in open market, have greatly changed. Neither facts nor reason now permit of different treatment being accorded him from that given to

other beasts, except so far as protection from his teeth is concerned. If the fact was proven that this was an unregistered dog, the charge would still be wrong. The statute, like all others, must be reasonably construed. The evil to be remedied and the means needed to remedy it, must be considered. The charge, without reference to § 3755, should have informed the jury that the dog could be killed to prevent him from doing mischief, if such a measure were necessary for that purpose, and the mischief which he was doing was so considerable as to warrant such an extreme course. It cannot be so that "any mischief is enough," or that "if the dog was found doing or attempting to do mischief, he was properly killed, whether this was necessary or not."

5. The statute as originally passed was nothing but an affirmance of the common law, and a provision that the remedy furnished by that should not be taken away by implication by the prior portion of that same statute giving the selectmen power to order dogs confined. The terms of the statute as originally passed were, " But nothing in this act shall be construed to prevent any person from killing any dog found mad or justly suspected to be mad, or that should be found doing mischief or attempting to do the same, when alone out of the possession of his owner and distant from the care and control of any person having the charge of such dog." Revision of 1750, p. 320 ; Revision of 1784, p. 237. A change made by the compilers of a statute in an attempt at more conciseness cannot be held to make a change in the meaning, unless some very plain reason is given for the departure. *Moors* v. *Bunker*, 9 Foster, 421 ; *Hughes* v. *Farrar*, 45 Maine, 72 ; *Douglass* v. *Howland*, 24 Wend., 45 ; *Quinebaug Bank* v. *Tarbox*, 20 Conn., 518. It follows then that the right to kill is only that furnished by the common law as raised by the pleadings, and could not have been greater even if the pleadings had been different. This right is only to be exercised in the protection of property, and only when necessary for that purpose, and that, too, subject to the further restriction that the relative difference in value between the dog and the prop-

erty injured must be taken into consideration. *Perry* v. *Phipps*, 10 Ired. Law, 259 ; *Brill* v. *Flagler*, 23 Wend., 354 ; *Anderson* v. *Smith*, 7 Ill. App., 354 ; *Morse* v. *Nixon*, 6 Jones Law, 293 ; *Hinckley* v. *Emerson*, 4 Cow., 351 ; *Brent* v. *Kimball*, 60 Ill., 214. Such also was the English law. *Wright* v. *Ramscol*, 1 Saund., 84 ; *Vere* v. *Lord Cawdon*, 11 East, 569. In no case in the books can it be found to have been exercised except against such injuries as are inflicted by the teeth of the dog and not by his feet. In a somewhat similar case in Illinois, the court ruled that such a right did not exist against a wild animal partially tamed, whose incursions into an enclosed field were much more startling in their effect than those of this dog in the lot in question. *Ulery* v. *Jones*, 81 Ill., 403.

*S. Judson, Jr.*, for the appellee.

LOOMIS, J. This is a complaint to recover damages of the defendant for killing the plaintiff's dog. The defendant in his pleadings and upon the trial admitted the killing of the dog, but left it to the plaintiff to prove his own title and right to bring the suit. The defendant also alleged in his answer four special defenses by way of justification of his act. The second and fifth defenses were based on the alleged fact that the dog was, when killed, and long had been, a common and intolerable nuisance, both to the defendant and to all the people in the neighborhood. These defenses were practically eliminated from the case by the ruling of the court; so that only the third and fourth are important for our present discussion. They are as follows :

" *Third Defense*. Said dog was at the time of said shooting, and had been for a long time previous thereto, engaged in doing mischief on the premises of the defendant, and was greatly injuring his crops, and the shooting of said animal was necessary to the protection and preservation of his property.

" *Fourth Defense*. That said dog was at the time of said shooting found at large, and was a stray dog, without any

claim of ownership therein by the plaintiff, who, if ever the owner thereof, had abandoned any property rights in the same."

The plaintiff demurred to the third defense on the ground that a dog may not be killed for any injury to inanimate property, which the court overruled, and the plaintiff then replied specially to that defense as follows:—

"The only mischief done by said dog at the time of the shooting was to lie down upon the herbage of the defendant, where he was, and for some time previous to said shooting had been, lying down fast asleep and quiet, doing no damage to said herbage except to press the same down with his body, from which position it would readily rise when the dog should move. Said dog could readily have been driven from the place where he was so lying, and said shooting was not necessary either to protect or to preserve said property." The allegations of the fourth defense were denied.

The questions for review, as presented by the assignments of error, relate solely to the instructions given by the court to the jury. The plaintiff requested the court to charge the jury as follows:—

"1. If the defendant might have defended his property from the attack of animals, he must do so in a reasonable way, and must take into consideration the relative value of the thing about to be destroyed and the animal which he injures.

"2. In order to justify the defendant in killing the dog, such killing must have been necessary to protect and preserve his property from present injury. No injury done by the animal in the past would justify the defendant in killing him.

"3. If the dog was doing no new damage at the time he was shot, the killing would not be justified, even to protect the crops of the defendant from injury from that particular dog at a future day, as the defendant would not be justified in shooting the dog from any apprehension of future trespasses by him.

"4. If the defendant had any good reason to suppose that the dog would in the future trespass upon said crops, it was

Simmonds *v.* Holmes.

his duty to use reasonable diligence to find the owner, so that the dog might be restrained by him.

"5. If the trespass committed by this dog was of the same nature as that which would be committed by any domestic animal, then no greater right existed in the defendant to kill him than he would have in the case of a horse or a cow or any other domestic animal."

The assignment of errors is as follows:—

"1. The court erred and mistook the law in refusing to charge the jury as requested by the plaintiff, and by charging instead, as appears from the charge, from 'the law applicable to this case is found both outside of and in our statute book,' to 'and upon all of these considerations and facts you must arrive at a conclusion as to whether it was reasonably necessary for Mr. Holmes at that time to kill the dog in order to protect his property, because, if it was, he had a right to do as he did,' inclusive.

"2. The court erred and mistook the law by charging as follows:—'The law as I have explained it to you hitherto is the common law upon the subject. Our statute, however, prescribes a different and further rule. All dogs found doing or attempting to do mischief, when not under the care of any person, may be killed. To repeat, all dogs found doing or attempting to do mischief, when not under the care of any person, may be killed. You will observe that there are here two pre-requisites to the right of killing. One is that the dog must be found doing or attempting to do mischief; the other is that he must be away from under the care of any person. It is not claimed in this case that the dog at the time of the killing was under the care of any person; and therefore you are to determine whether he was found doing or attempting to do mischief. You will observe that if the killing comes within the permission of this statute, the killing need not have been necessary. If the dog was found doing or attempting to do mischief, the killing need not have been necessary; and therefore if this dog when shot was found doing or attempting to do mischief, the defendant had a perfect right to shoot him, even if the

act was not necessary to protect his property. This is a disability under which no other domestic animal labors, as I have already observed to you. 'Found doing or attempting to do mischief,' does not necessarily mean that at the very moment of the killing the dog must be doing actual injury. For instance, he may be shot in the air when leaping from one bed of young and tender plants to another, during an excursion through them; although not at the instant doing injury, he would still be within the law just referred to. Again, he might be in a lot planted with such plants in two parts with a cartway between them. While racing through such a lot injuring and tearing up the plants he might be shot, even if at the precise instant of the shooting he was simply running across the cartway. If a dog, engaged in racing through such a lot, should temporarily lie down even on a bare spot in it to recruit his strength for a continuation of his racing, I think that even while so lying down he would come within the provisions of the statute under consideration. These illustrations, however, are not intended by any means to exhaust the instances in which a dog may be considered to be doing or attempting to do mischief, even if at the precise instant he is not doing actual injury. I simply cite them to help you understand the meaning of the law. I do not instruct you that any of them are the case at bar. The words 'doing or attempting to do mischief,' are to have a common sense interpretation, but the act or acts complained of must be fairly within their ordinary meaning. The amount of mischief is not made a matter of consequence by the statute. Any mischief is enough. If you find that the dog was doing or attempting to do mischief when he was shot, you will render your verdict for the defendant.

"3. The court also erred and mistook the law in charging as follows:—'Remembering the two aspects of the other part of the case, that if the dog was found doing mischief or attempting to do mischief he was properly killed, whether this was necessary or not.'"

Except so far as the refusal of the court to comply with

the plaintiff's specific requests is claimed for error, we cannot regard the first assignment as any compliance with the rule (Rules of Practice, ch. 14, sec. 1), that requires the precise matters of error to be set forth. All that it amounts to is that, between such a line and another line of the charge some error may be found. That part of the charge referred to related to the instructions of the court relative to the common law. Only the closing passage is given in the assignment. There is no objection to that, but the court had previously given a very clear exposition of the principles of the common law as follows :—

" The law applicable to this case is found both outside of and in our statute book. At common law—that is, outside of the statute book and independent of it—a man may kill a dog to prevent the destruction of or damage to his property, if he has reasonable ground to believe that such killing is necessary to prevent such destruction or damage. Preventive remedies, however, must always be proportioned to the case, to the imminency of the danger, the evil to be avoided, and the means at hand for avoiding it. The kind and amount of defensive force should be reasonably proportioned to the kind and amount of danger, to the apparent consequences of using the force, and the apparent consequences of not using it. If, under all the circumstances, the killing of the dog is, or reasonably appears to be, necessary to the free and perfect enjoyment by the defendant of his property, he may kill the dog. ' Necessary,' when used in these connections, however, does not mean absolutely necessary. It means relatively so, when it is considered that the animal in question is a dog, and when it is considered what his past acts have been, what his future conduct will probably be, what the threatened injury from him at the time is, and what the available means of efficient protection open to the defendant at the time are. A dog may not be killed simply and solely for past and finished misconduct. Dogs are entitled, however, to less regard and protection than more harmless and useful domestic animals ; but a needless or wanton destruction of a dog, simply to prevent

anticipated mischief by him, cannot be justified under the law which I have just explained to you. Let me repeat: the needless or wanton destruction of a dog, simply to prevent anticipated mischief by him, cannot be justified under the law which I have just explained to you."

In the argument before this court no particular objection was made to the charge on this part of the case, except as to the point contained in the demurrer, and some difference between the court and counsel as to the facts of the case, but the whole burden of complaint was that the court allowed the defendant to justify under the statute, and that the statute was misconstrued. We will therefore confine our discussion to these questions.

We will first consider whether error can be predicated upon the fact that the court allowed the defendant to justify under the provisions of the statute (Gen. Statutes, § 3757), which provides that all dogs "found doing or attempting to do mischief, when not under the care of any person, may be killed."

Two facts only are required to justify the killing, namely, that the dog was found doing or attempting to do mischief, and that at the time it was not under any person's care. The first of these facts is alleged in the third defense, and the last is in effect alleged in the first sentence of the fourth defense, that the dog was at the time found at large. The pleading is of course defective in that it requires two apparently independent defenses to be combined in one to constitute the statutory defense, and also requires us to ignore the manifest object of the fourth defense, which was to aver an abandonment of ownership, but the allegation of each fact in a separate defense would justify the admission of evidence to prove the allegations, and, being proved, the jury would have before them all the facts necessary to justify the act complained of under the statute.

Assuming however that this was an objectionable mode of pleading and that a timely objection would have prevailed, did not the plaintiff's neglect to make the point in the trial

court, when he had ample opportunity to do so, waive the objection ?

The plaintiff says that he construed the pleadings as presenting only the common law defense, and therefore, being misled, he did not object. This might have been a sufficient reply, had not the defendant during his argument distinctly claimed that the killing of the dog was justified by the provisions of section 3757 of the General Statutes. The plaintiff had full opportunity to reply to this claim, and yet he made no objection founded on the pleadings or otherwise; and he allowed the court, without suggesting an objection, to charge the jury fully in regard to this statute and its bearing upon the case. This conduct of the plaintiff brings the case within the well settled principle that an exception is regarded as waived where the party is present and has an opportunity to except and does not avail himself of it, and the rule is especially to be enforced where the objection, as in this case, is such as, if offered at the trial, it might have been distinctly obviated by amendment. *Peebles* v. *Rand*, 43 N. Hamp., 337 ; *N. York & Erie R. R. Co.* v. *Cook*, 2 Sandf., 732 ; *Haverill Loan & Fund Association* v. *Cronin*, 4 Allen, 141.

This brings us to the consideration of the remaining question, whether the court misconstrued the statute. The contention of the plaintiff that there were no facts claimed to have been proved to which the statute was applicable, is not supported by the finding, for there was evidence tending to show that the dog was not under any person's care at the time, and also that he was in the act of doing mischief by destroying the young and tender plants in the defendant's garden. But the plaintiff claims that even such an injury is neither within the statute nor the common law, because the injury contemplated is to property having animal life. There is no warrant at all for giving to the word property, or to the word mischief, this exceedingly restricted meaning. All the rules of construction are opposed to such a claim. It would be strange indeed if a dog could be killed when attacking a live animal and yet could make off with

impunity with the carcass of one which the owner had killed
and prepared for his own use or for market. In *King* v.
*Kline*, 6 Penn. St., 320, the killing of a dog was justified
because it was necessary to prevent it from consuming cer-
tain food which was in process of drying in an enclosure.
But the plaintiff says that if the mischief referred to may
be an injury to inanimate property, the law at least contem-
plates that the instrument of injury or mischief used by the
dog must be his teeth and not his feet or body. It is enough
to say that the statute is entirely silent as to the mode of in-
flicting the injury or doing the mischief. It is as truly mis-
chief on the part of a dog to uproot garden vegetables with
his feet, as to pull them up with his teeth.

Again, the plaintiff contends that neither the common
law nor the statute will justify the killing of a dog unless
for the necessary protection of property, to be ascertained
by comparing the value of the property being injured with
the value of the dog. By our statute, (Gen. Statutes, § 1,)
" words and phrases are to be construed according to the
commonly approved usage of language." No such qualifi-
cation as the plaintiff claims can be given to the statute
without violating this rule. The statute allows the killing
of all dogs, irrespective of their value, if engaged in mis-
chief away from their keepers. It contemplates a summary
and sudden act of protection while the mischief is being
done or attempted. There is no time or opportunity to
place a value on the dog or on the thing threatened with
injury. The qualifications therefore suggested we deem in-
consistent with both the letter and the spirit and purpose of
the statute.

Finally it is claimed that the court should have construed
section 3757 of the statutes in connection with section 3755,
and should have instructed the jury that it was only the un-
licensed dog which could be killed while doing or attempt-
ing mischief away from its owner. It is a sufficient answer
that no evidence whatever was offered to show that the dog
was licensed. The suit was not brought to recover damages

for killing a licensed dog, and no reply alleging the fact was made to the defendant's answer justifying the killing.

But if the question was properly made, and depended upon the construction of the two sections of the statute referred to, we could not accept the plaintiff's exposition. Section 3755, among other things, makes a person liable both to a civil action and a criminal complaint, who " shall kill any registered dog, unless such killing be justifiable in the protection of life or property." Section 3757 permits *all dogs* to be killed, found doing or attempting to do mischief. Now the plaintiff's construction requires an exception to be inserted in the last mentioned section, so that instead of being absolute, as at present, it would read all dogs " except licensed ones." Now in construing these two sections so that both may operate together, it seems to us much more reasonable, and more consonant with all the rules of construction, to let the clause in 3757, which is without any exception, stand as it reads, and as the first mentioned section already excepts cases where the killing of a dog is justifiable, it ought to be construed as referring to the killing which is justifiable under the last mentioned section as well as the killing which is justifiable under the common law.

There was no error in the judgment complained of.

In this opinion the other judges concurred.