## 1524.   MILLER *v*. THE STATE.

1. A dog which makes a practice of killing or injuring sheep is a nuisance. The owner of sheep which from time to time have been attacked by such a dog may, without liability to prosecution under the statute against cruelty to animals, cause it to be killed, even after it has escaped from the place where it attacked the sheep.

2. While a person may violate the statute by cruelty to his own dog, yet the owner may kill his dog by some swift and comparatively painless method, without liability to prosecution. One who has the owner's consent to kill the dog stands upon a similar footing.

Misdemeanor, from city court of Floyd county—Judge Hamilton.   October 28, 1908.

Submitted January 14,—Decided January 27, 1909.

The defendant was convicted of cruelty to animals, in that he shot and killed a fice-dog belonging to Mr. Stanton, the prosecutor. The killing was admitted. The defendant, who was a boy, attempted to set up, in his defense, that his father had a large number of sheep; that throughout several months prior to the killing this dog had been making raids upon these sheep and had killed eight or nine of them and had injured several more; that the dog was so sly that when the defendant or his father would get in sight of it as it was attacking the sheep, it would run away, so that it could not be killed in the act; that complaint had been made to Mr. Stanton and a request made of him to confine his fice, and Mr. Stanton replied that he would not confine the dog, but that if it killed any more sheep it might be killed; that on the night before the fice was killed it made another attack on the sheep, killing some of them and injuring others. The prosecutor admitted telling the boy's father that if he caught the dog on his sheep he might kill it, but insisted that his consent to the killing of the dog extended only to killing it while it was in the act of killing sheep. The boy, at the instruction of his father, killed the dog while it was on the prosecutor's premises. The court charged the jury: "The defendant would have the right to drive or eject the prosecutor's dog from his premises to protect his sheep, but would have no right to kill the dog or fice even on his own premises, unless it was caught in the act of killing or interfering with the defendant's sheep." This and other rulings consistent with this view of the law are made the subject of exceptions.

*F. W. Copeland*, for plaintiff in error.

*John W. Bale, solicitor-general, W. H. Ennis,* contra.

POWELL, J. (After stating the foregoing facts.)

Judge Hamilton, who tried the case in the court below and who is usually so well versed in all matters of general jurisprudence, seems to have gone wrong when he encountered the intricacies of the dog law. He was doubtless misled by the precedents of the modern English cases, when he should have looked further back to the ancient wisdom of the common-law authorities. He seems to have overlooked the provision of the canine code which makes the practices of egg-sucking and sheep-killing capital felonies. Such is the law, and so it has been so long that the memory of dogs and men runneth not to the contrary. Indeed, in the case of Wadhurst *v.* Damme (Cro. Jac. 45), decided by the court of King's Bench over three hundred years ago, Sir John Popham, Knt., Chief Justice, in a case where the warrener killed a dog which had been killing conies in his warren, said, "The common use of England is to kill dogs and cats in all warrens as well as any vermin; which shows that the law hath been always taken to be that they may well kill them;" and all the court joined in holding the defendant not liable, saying, "It is good cause for the killing him, in salvation of his conies; for, having used to haunt the warren, he can not otherwise be restrained."

The cynical (the word may be taken here in its etymological as well as in its popular meaning) reflection of the modern philosopher, that the more he sees of some dogs the less he thinks of some men, has no reference to suck-egg dogs or to sheep-killing dogs. In some States (e. g. Massachusetts, Missouri, and California) the sheep-killing dog is made an outlaw by statute; in this State his status is a part of the higher or unwritten law. We think that the court erred in holding that it was necessary to kill the dog in flagrante delicto, to make the act justifiable. It may be true— and there is respectable authority to support the proposition— that the sucking of a single egg or the worrying of sheep one time may not establish a dog's status as an outlaw and a nuisance, so as to justify his summary execution whenever and wherever he may thereafter be met (see Brent *v.* Kimball, 60 Ill. 211, 14 Am. Rep. 35; Wells *v.* Head, 4 Car. & P. 568; Dodson *v.* Mock, 4 Dev. & Bat. L. 146, 20 N. C. 282, 32 Am. Dec. 677; Bowers *v.* Horan, 93 Mich. 420, 53 N. W. 535, 17 L. R. A. 773), but when a dog acquires the egg-

sucking or sheep-killing habit, he becomes a nuisance and may be destroyed as such. Throne *v.* Mead, 122 Mich. 273 (80 N. W. 1080, 80 Am. St. Rep. 568) ; Dodson *v.* Mock, supra; Hinckley *v.* Emerson, 4 Cow. 351 (15 Am. Dec. 383) ; Brown *v.* Carpenter, 26 Vt. 638 (62 Am. Dec. 603) ; Hubbard *v.* Preston, 90 Mich. 221 (51 N. W. 209, 15 L. R. A. 249, and notes) ; Simmonds *v.* Holmes, 61 Conn. 1 (23 Atl. 702, 15 L. R. A. 253) ; Nesbit *v.* Wilbur, 177 Mass. 200 (58 N. E. 586) ; Wood on Nuisances (3d ed.), §771. In Boulton *v.* Banks, Cro. Car. 254 (B. R.), a dog alleged to have been "assuetus ad mordendum porcos" was held not to be a dog which one might lawfully keep. We can not agree with those courts which hold that a dog is not a domestic animal within the purview of statutes punishing cruelty to domestic animals (see *Wilcox* v. *State,* 101 *Ga.* 563, 28 S. E. 981, 39 L. R. A. 709; *May* v. *State,* 120 *Ga.* 497, 48 S. E. 153) ; but as much as we love some dogs (for the writer admits that he loves some dogs), we must concede the correctness of the doctrine, almost universally recognized by the courts, that the dog is not in full fellowship and standing in this circle of domestic protégés, that his rights are more limited and his protection less complete. See Blair *v.* Forehand, 100 Mass. 140 (97 Am. Dec. 82). Whether the killing of a dog is justifiable or not, as related to a civil case, seems to depend upon whether the killing was done, not necessarily while some act of depredation was in progress, but under such circumstances as that the killing was a fair act of prudence on the part of the person doing the killing, reasonable regard being had to the value of the dog, the value of the property menaced, and the probability of present or future depredations. Compare Hodges *v.* Causey, 77 Miss. 353 (26 So. 945, 48 L. R. A. 95, 78 Am. St. R. 525). In a criminal prosecution under a statute preventing wilful and unjustifiable cruelty to a domestic animal, such as the one under which the present defendant was accused and tried, the defendant should not be convicted if the dog was killed not in a spirit of cruelty, but because it had shown itself to be a menace to property more valuable than itself; the defendant's motive and the spirit actuating him being generally questions for the jury. The well-known habits of sheep-killing dogs, of being so sly and wary when engaged in their nefarious practices as to elude every approach of the owner of the sheep, would render the privilege of killing only when the marauder was in flagrante delicto

a very inadequate protection. Even the human cur who has invaded the domestic fold and who is likely to invade it further may be killed, though the injured person does not catch him in the very act. *Biggs* v. *State, 29 Ga.* 723 (76 Am. D. 630); *Drysdale* v. *State, 83 Ga.* 744 (10 S. E. 358, 6 L. R. A. 424, 20 Am. St. R. 340).

2. We infer from certain exceptions appearing in the record, as well as from the argument of the State's counsel, that the trial judge accepted the view that the consent of the owner of the dog to its being killed was not a defense. Of course there may be cases of indictable cruelty to one's own dog; but we do not think that the owner is without the privilege of killing in some swift and comparatively painless manner a dog that is worthless or that has evinced dangerous tendencies; and if he may lawfully kill it, he may also consent that another person may do the execution. If it were the law that a person might not kill his own dog, the ownership of one of these animals, especially in case it were a bitch, would entail a considerable burden; for one who found himself possessed of a worthless cur-bitch would be obliged to care for and support not only her, but also the "heirs of her body" and all her "lineal descendants" which he could not give away, even to the third and the fourth, yes, even to the thirty-third and the thirty-fourth generation; for, under the statute, cruelty may consist in neglect, as well as in some overt act.

Young Mr. Miller, it must be conceded, committed a serious breach of propriety and a lack of neighborly consideration in killing the dog in Mr. Stanton's yard, in the presence of the latter's family. They doubtless loved the little fice; these little animals, however worthless they may be, have a way of endearing themselves, especially to the women and children of the family. I well remember how in the days gone by my childish tears flowed as, in poignant grief, I stood broken-hearted and viewed the cold remains of my fice dog, Buster, who had met an untimely death. But under the record we are inclined to think that the defendant's cruelty was operative against Mr. Stanton's family, rather than against the dog, which seems to have been worthless and of a vicious temperament. He did wrong to shoot when and where he did, but he is entitled to a new trial as to the penal offense with which he stands charged.         *Judgment reversed.*