## 40644. WARD v. BENGE.

Decided April 28, 1964.

*Harry F. Thompson,* for plaintiff in error.
*Buckner F. Melton, O. Larkin Crumbley,* contra.

EBERHARDT, Judge.   In the vernacular of my boyhood days this is a real, genuine "dog-gone" case. A little bitch named "Boy"—a contradiction so confusing perhaps even to the animal itself that it may have decided to seek another shelter and another master—was the "bone of contention" in a trial that lasted long enough to produce a 125 page brief of the evidence in the record on appeal.   A review of that evidence discloses that the plaintiff's claim of ownership was amply supported—a claim which the defendant never denied.   But the evidence was in sharp conflict as to whether the defendant had ever been in possession—a fact which defendant vehemently and vigorously denied.   It was further disclosed that plaintiff had recovered possession some time prior to the trial when she, the little bitch, was found running loose.   Ordinarily that should have ended this litigation, and might well have done so but for the apparent fact that plaintiff's feelings had been grossly ruffled by what was thought to have been an attempt on the part of the defendant surreptitiously to acquire an animal that had every promise of becoming an affectionate, loyal protector and friend.

While cases involving "man's best friend" infrequently reach our appellate courts, they have gotten elaborate treatment once

they did. For example in *Montgomery v. Maryland Cas. Co.*, 169 Ga. 746 (151 SE 363) the issue was whether the widow of a watchman at a plant on the Savannah River was entitled to workmen's compensation when her husband drowned while attempting to rescue his pet dog during the time he was on duty. The court disposed summarily in the headnotes of contentions that the dog was a "fellow workman" or a part of the watchman's "equipment." In the opinion, however, Justice Gilbert assayed this faithful beast's place at man's side from Biblical times in a dissertation strongly laced with literary quotations, concluding with the following: "From what has been said it will not be difficult to ascertain where the sentiment and inclination of the court would lead. The court, however, is a court for the correction of errors, and we must be guided by the law. The law of the case will be found in the headnotes." Compensation was denied. In *Strong v. Georgia R. &c. Co.*, 118 Ga. 515 (45 SE 366) it was held that a railroad could not be held liable for the negligent killing of a dog. In a concurring opinion Justice Cobb, joined by Justice Fish, quoted at length from a then recent superior court judge's opinion on "learned dog law." Other examples may found in *Fincher v. Collum*, 2 Ga. App. 740 (59 SE 22) concerning she-dogs as "attractive nuisances" in the neighborhood and in *Miller v. State*, 5 Ga. App. 463 (63 SE 571) there is a suggestion by the judge, quoting a philosopher, that ". . . the more he sees of some dogs the less he thinks of some men . . . ," but hastens to add that this has no reference to suck-egg dogs or sheep-killing dogs, and observes that under provisions of the canine code these are guilty of capital offenses.

The instant case again illustrates the high esteem in which members of the dog kingdom are generally held by humans. Here, plaintiff recovered possession of her dog "Boy" before trial but pursued her remedy in court. Now she complains that the adverse verdict at the hands of the jury is an adjudication of title in the defendant. We hardly see how this could be the situation because the evidence of plaintiff's ownership was uncontradicted and the defendant never claimed title. Our interpretation of the meaning of the verdict is simply that the defendant never had possession of the dog. See *Ben Hyman &*

*Co. v. Solow,* 103 Ga. App. 152 (118 SE2d 706). On this basis, plaintiff has no complaint.

*Judgment affirmed. Bell, P. J., and Jordan, J., concur.*