## RICHARD T. HOWARD *vs.* ALANSON CRANDALL.

Property held by virtue of an execution cannot be replevied under any of the provisions of the statute with regard to replevin, Gen. Statutes, tit. 1, sec. 327.

REPLEVIN, brought up by a motion for a new trial from the Court of Common Pleas for New London county, *Willey, J.* The case is sufficiently stated in the opinion.

*Cross*, with whom was *Swan*, in support of the motion.

*Sheffield*, contra.

BUTLER, C. J. This is an attempt, as appears upon the face of the writ, to replevy property holden by virtue of an execution. On the trial the plaintiff claimed, and asked the

court to rule, that such an action could be sustained under the provisions of the statute relative to replevin of goods attached; and also under the provisions of the statute of 1863 relative to the replevin of goods unlawfully detained. The court did not so rule, and the plaintiff claims that therein the court erred.

We think the rulings of the court were correct.

The action of replevin was introduced and has always been limited and regulated in this state by statute, and no right to replevy property in execution has ever been recognized or permitted.

Replevin was first authorized by the code of 1650, and by a provision in the same article which authorized attachments. That provision was in the following form:

" Every man shall have liberty to replevy his cattle or goods impounded, distrained, seized or extended, (unless it be upon execution after judgment and in payment of fines,) provided in like manner he put in good security." (Col. Records, vol. 1st, page 511.)   Subsequently, at a revision, the word " attached" was inserted between the words " distrained " and " seized," and the word " rates" was added after the word " fines," and also an exception of matters cognizable in admiralty, in the exemption clause.   In that form the provision constituted the entire statutory law of the state respecting replevin until the revision of 1821, and constituted also the first section of the more extended act of that revision.   That section of the act of 1821 remained unchanged until the revision of 1848.

We thus see that from 1650 until 1848 property taken in execution was expressly exempted from replevin.  This exemption was in conformity with the principles of the common law.   That law considered goods taken in execution to be in the custody of the law and did not permit them to be replevied.   See the authorities collected by the reporter in a note to *Pangburn* v. *Partridge*, 7 Johnson, 144, also cases cited by the court in *Hall* v. *Tuttle*, 2 Wendell, 478.

An exception to the rule was adopted in New York in cases where the property was taken by a levy of execution from the

actual possession of one not a party to the suit, who claimed to be the owner. The right of such third person under such circumstances, to replevy his property though taken in execution, is recognized and regulated by their statutes. Such a right is also authorized and regulated by the statutes of Massachusetts, but it has never been recognized by our courts or permitted by our statutes. If it was recognized by either, the finding of facts in this case would not bring the plaintiff within the exception, for it is not found that the property when taken in execution was in the actual possession of the plaintiff.

At the revision of 1848 it was thought advisable to authorize the dissolution of an attachment by the substitution of a bond on the application of the defendant in the suit, and that he should be deprived of any right to replevy. That change, and the introduction of desired forms, made it necessary that the act relating to replevin should be re-written, and it was re-written by Judge Dutton. In the new act drawn up by him, the first and substitute section was as follows :

"Writs of replevin shall be allowed in the following cases only : First, in favor of any person to recover his cattle or other animals when impounded ; Second, in favor of any person claiming to be the owner of goods or chattels attached in any suit, other than the defendant therein."

In that act the express exemption of property taken in execution was omitted as unnecessary. That was then, and still is, well understood. It is also perfectly apparent from the framework and language of the act. 1st. Replevin does not lie for goods taken in execution unless authorized by statute. That act contains no such authority. 2d. The writ is allowed by the act in two cases only, viz.: of cattle impounded and goods "attached in a suit." The distinction between goods "attached in a suit" and goods levied upon by execution had not only been recognized in the statute for 198 years, but is well-defined in principle. Goods attached in a suit are holden for the preservation of a lien. Goods taken in execution are not holden by force of lien, but absolutely. They are in the custody of the law to be sold pursuant to its provisions, and cannot be interfered with by replevin without obstructing

the operations of positive law, destroying the rights of the
creditor, or subjecting the officer to absolute or contingent
hazard or loss.  Authority to replevy goods taken on execu-
tion could not safely be given therefore without statutory pro-
visions for the protection of the officer and creditor, and that
the distinguished jurist who drew up the act well knew.   No
such provisions are found in it.   3d.  It is apparent in every
section of the act that the draughtsman by the terms " at-
tached in any suit," meant goods holden on *mesne process*
only.  This plainly appears from the distinction preserved
between the officer who attached, and the officer who might
have the execution, in the section requiring a bond, and still
more plainly in the form of the writ given, which avers that
the goods are in the possession of the sheriff by virtue of an
attachment, and contains no averment applicable to goods
taken in execution.   The bond too is conditioned that the
goods shall be returned so that they *may be taken on execution*,
and there is a command to the officer *who attached the goods*
to deliver them to the officer serving the replevin, but no com-
mand so to deliver them to any officer holding goods in exe-
cution.   It would be a reproach to the memory of the jurist
who drew up that act, and to the revisers and the legislature
of 1848, to hold that they by such an act intended to authorize
goods taken in execution to be replevied.  We are all satisfied
that the action will not lie under the clause of the statute
relating to goods attached.

The claim that the action will lie in such a case under the
act of 1863 is equally groundless.  There is nothing in that
act which indicates any intention to change the common law
and the settled policy of the state in respect to replevying
goods in execution.  As originally passed it excepted cattle
impounded and goods attached—the only cases in which re-
plevin would then lie—showing clearly that by the terms
"unlawfully detained" the General Assembly did not intend
goods detained by legal process, and the exception is retained
in the first section of the revision of 1866.  It is not to be
credited that the first section would have been permitted to
stand as it does, if the replevying of goods in execution had

been contemplated. And when we look at the other provisions of the act, the matter is still more conclusively settled. The bond is not conditioned for the return of the goods to any officer, or the custody of the law, but to the defendant. What has the defendant, as an individual, to do with such goods if returned to him, or what right will he have to retain them against the judgment debtor? None whatever. And if we assent to the construction claimed, what will become of his attachment lien, or his rights as execution creditor?—especially if some other officer shall take them from him, or the plaintiff·in replevin, by attachment or execution in favor of another creditor? He will be remediless without a new process and a new attachment, or a new levy on an alias execution. The writ goes against him as an individual, and the judgment, if in his favor, is to be for a return to him as having an individual right. Clearly no unlawful detention by *legal process* is contemplated by the act of 1863, and the ruling of the court below was right.

A new trial must be denied.

In this opinion the other judges concurred.