CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ERRORS

OF THE

# STATE OF CONNECTICUT.

---

THE TOWN OF NORWALK EX REL. WILMOT FAWCETT *vs.* SAMUEL C. IRELAND ET AL.

68   1
72  159

68   1
76  200

Third Judicial District, Bridgeport, April Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, JS.

In an action against sureties to recover damages for a breach of the condition of an official bond, the defendants demurred to the claim for damages, "because on the facts stated the plaintiff is not entitled to the relief sought." *Held* that this was in no legal sense a demurrer to relief, and was in direct contravention of § 873 of the General Statutes, in not specifying the reasons why the complaint was insufficient; and that under such demurrer the question whether the defendants were in any wise liable under the allegations of the complaint, was not before the trial court.

The seizure by a constable of the goods of *A*, upon a writ of attachment on *mesne* process against *B*, is a breach of the condition of his official bond, for which the sureties upon such bond are liable in damages. The fact that our statute of replevin gives the owner of the goods another remedy, does not affect his right to sue on the bond.

Upon the trial the defendant constable identified a memorandum or inventory of the goods attached, containing also an estimate of the value of each article, made partly from his own inspection of the goods and the price marks thereon, and in part from information given him by his assistants at the time of attachment; but admitted that he could not specify any particular article as having been price-marked, or what ones had been put in the list from his own examination, or from information given him by his assistants. He also testified that nearly all the goods attached contained price marks. One of his assistants testified that the inventory value was based upon what the goods would bring at forced sale. The defendants then

VOL. LXVIII—1                                    (1)

offered the inventory in evidence to contradict the evidence of the plaintiff as to the value of the goods, as part of the *res gestœ*, as evidence of the value of the goods, and as descriptive of the property attached. The court excluded it, but permitted the witness to use it to refresh his recollection, which the witness did. *Held :—*

1. That inasmuch as the inventory itself testified to matters of which the witness never had any personal knowledge, it was properly excluded as substantive evidence, upon that ground.

2. That it did not tend to illustrate the character of the taking, and was therefore inadmissible as part of the *res gestœ.*

3. That it did not contradict the evidence of the plaintiff respecting price marks°on the goods, as that evidence was to the effect that some of the goods were marked, and the inventory failed to show what goods were marked and what were not.

4. That it was not admissible to prove the value of the goods, since that value was based upon the opinion or surmise of the officer and his assistants, as to what the goods would bring at a forced sale.

5. That the want of personal knowledge upon the part of the officer, rendered the inventory inadmissible as a description of the property attached.

Whether personal property claimed to be owned by the husband was in reality owned by him only as a partner of, or in common with, his wife, and thus subject to attachment in a suit against her, is primarily a question of fact for the trial court; although where the terms of the agreement and all the facts are found and appear on the record, the question of the existence of a partnership is one of law.

Upon the facts disclosed by the record it was *held* that no partnership or tenancy in common was shown to have existed between the husband and wife at the time of the attachment.

The relation of husband and wife and the opportunities thereby afforded for fraudulent transfers of property, is a consideration to be addressed to and to be regarded by the trial court.

The husband is not estopped from claiming entire ownership in goods, merely because they were innocently mingled with those of his wife in a store conducted by her; especially in the absence of a finding that any creditor, or even the attaching officer, was misled by the husband's conduct in this respect.

An assignment of error which embraces *several distinct claims is,* for that reason, defective.

[Argued April 23d—decided June 5th, 1896.]

ACTION upon the official bond of a constable to recover damages for an alleged trespass, brought to the Court of Common Pleas in Fairfield County and tried to the court, *Curtis, J.,* upon the defendants' demurrer to the complaint; the court overruled the demurrer and thereafter the case was tried, upon the defendants' denial, to the court, *Downs, J.,*

who found the facts and rendered judgment for the plaintiff, and the defendants appealed for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*John H. Light,* for the appellants (defendants).

This demurrer should have been sustained. The law on this subject, as we understand it, with a cogent review and criticism of most of the cases against our position, is well sustained in the case of *State* v. *Conover,* 28 N. J. L., 229. The law as laid down by the N. J. court in the foregoing decision, is supported by the following cases: *State* v. *Brown,* 54 Md., 322; *State* v. *Long,* 8 (Iredell's) N. Car., 415; *State* v. *Brown,* 11 id., 141; *Taylor* v. *Parker,* 43 Wis., 78; *Barnes* v. *Whitaker,* 45 id., 204; *State* v. *McDonough,* 9 Mo. App., 63; *State* v. *Davis,* 88 Mo., 585; *Heidenheimer* v. *Brent,* 59 Tex., 533; *Governor* v. *Hancock,* 2 Ala., 728; *Governor* v. *Pearce,* 31 id., 465; *McKee* v. *Griffin,* 66 id., 211; *Jenkins* v. *Lemonds,* 29 Ind., 294; *Carey* v. *State,* 34 id., 105; *Brown* v. *Mosley,* 19 Miss., 354; *Collier* v. *Stoddard,* 19 Ga., 274; *Eaton* v. *Kelley,* 72 N. Car., 110; *Huffman* v. *Koppelkon,* 8 Neb. 344; *People* v. *Lucas,* 93 N. Y., 585. The inventory or memorandum of goods attached, was admissible in evidence. 2 Rice on Evidence (Civil), 745; *Howard* v. *McDonough et al.,* 77 N. Y., 592; *McCromick* v. *Central R. R. Co.,* 49 id., 303; *Halsey* v. *Sinsebaugh,* 15 id., 485, and cases cited in note 1 thereto; *Lapham* v. *Kelly,* 35 Vt., 195; *Guy* v. *Mead,* 22 N. Y., 462, 465; *Haven* v. *Wendell,* 11 N. H., 112; *Kelsea* v. *Fletcher,* 48 id., 282; *Pearson* v. *Wightman,* 1 Const. Court Report (S. Car.), 331; *Owens* v. *State,* 67 Md., 307. This question was recently passed upon by this court in the case of *Curtis* v. *Bradley,* 65 Conn., 99, in which case it was held that such memoranda are admissible in evidence. See also *Bridgewater* v. *Roxbury,* 54 id., 213. It cannot be claimed that the plaintiff had a separate and distinct interest in any of the goods attached. The wife must have had either an interest in common, or a partnership interest with her husband in the goods now claimed by him;

and, if she had such an interest, it was attachable in the suit brought against her. *Stevens* v. *Stevens*, 39 Conn., 480; *Parker* v. *Canfield*, 37 id., 266; *Tyler* v. *Waddingham*, 58 id., 383. According to the officer's inventory all of the property attached, at retail prices, only amounted to $500; and the testimony shows that the husband's portion, if any, of all the property attached, was very small. So that if the plaintiff was entitled to anything on the evidence, he was simply entitled to nominal damages.

*John C. Chamberlain* and *Joseph A. Gray*, for the appellee (plaintiff).

The defendants' demurrer was general and raised no question of law. It is in effect the same as the demurrer in the case of *Walko* v. *Walko*, 64 Conn., 74. In this State all demurrers must be special (Gen. Statutes, § 873). In suing upon the bond the only relief that could be asked for would be damages. With the exception of three States in the Union, the law is uniform to the effect that the sureties of the sheriff are liable for such misconduct. *Lammon* v. *Frazier*, 111 U. S., 17; *Cummings* v. *Brown*, 43 N. Y., 514; *Com.* v. *Cole*, 46 Amer. Dig., 514; *People* v. *Schuyler*, 4 Comst. (N. Y.), 173; *Cormack* v. *Commonwealth*, 5 Binn. (Pa.), 183; *Brunott* v. *McKee*, 5 Watt. & Serg. (Pa.), 515; *State* v. *Fitzpatrick*, 64 Mo., 185; *Charles* v. *Haskins*, 11 Iowa, 330. It makes no difference whether the officer takes the goods knowingly or by mistake. *Turner, Frazier & Co.* v. *Killian*, 12 Neb., 580; *Holman* v. *Carroll*, 27 Tex., 27; *Van Pelt* v. *Little*, 14 Cal., 194; *U. S.* v. *Sherman & Hine*, 3 McArth., 27; *Archer* v. *Noble*, 3 Greenl'f (Mass.), 418; *Harris* v. *Hanson*, 2 Fairfield (Me.), 241; *Inhabitants of Greenfield* v. *Wilson*, 13 Gray (Mass.), 384; *Ohio* v. *Jennings*, 4 Ohio St., 419; *Songster* v. *Commonwealth*, 17 Gratt. (Va.), 124; *Jewell* v. *Mills*, 31 Bush (Ky.), 62; *Commonwealth* v. *Stockton*, 5 T. B. Mon. (Ky.), 192. New Jersey, North Carolina and Wisconsin now stand alone in holding that such sureties are not liable. The inventory was properly rejected. *Curtis* v. *Bradley*, 65 Conn., 114. If, however, the memorandum was

improperly rejected, no harm could come to the defendant, for it could not have altered the result. The values stated in this inventory were not claimed to be true ones, but only such as the property would bring at its forced sale, according to the guesses of the witnesses. And there is nothing in it which would assist in determining what portion of it belonged to the plaintiff. *Carroll* v. *Weaver*, 65 Conn., 77; *State* v. *Stevens*, ibid., 93; Gen. Stat., § 1135. Of the other claims made by the defendant two, at least, were questions of fact purely, namely, the nature of the interest of the plaintiff in these goods. The third claim, that the plaintiff was estopped from claiming a distinct interest in said goods, was properly decided against the defendant. Rules of Practice, Chap. XIV.; Gen. Stat., § 1135; *Crandall* v. *State*, 10 Conn., 370; *Reynolds* v. *Reynolds*, 15 id., 98; *Tolland* v. *Willington*, 26 id., 580; *Cooley* v. *Gilland*, 54 id., 80; *Simmons* v. *Holmes*, 61 id., 1. When goods are confused it is a question of good faith on the part of the defendant and third parties. But the court distinctly finds that there was no confusion of goods and no bad faith in this instance. *Smith* v. *Sanbourn*, 6 Gray, 134; Wade on Attachments, § 134; *Weil* v. *Selveiston*, 6 Bush (Ky.), 698; *Hesseltine* v. *Stockwell*, 30 Me., 237.

FENN, J. This is an action brought against a constable and the two sureties upon his official bond, to recover damages for the act of such constable in attaching the property of the plaintiff, in a suit against the plaintiff's wife, to which suit the plaintiff himself was not a party. The Court of Common Pleas in Fairfield county rendered judgment in the present suit in favor of the plaintiff, against all of the defendants, for substantial damages. The appeal presents·three reasons material for us to examine :—

*First.* It is claimed that the court erred in overruling the demurrer to the complaint, of the two defendants who were sureties, Herman Quittner and William Ireland. *Second.* In refusing to admit in evidence a certain written inventory. *Third.* In overruling the claims of the defendants, to the effect that it appeared by the finding that if the plaintiff had

any interest in the property taken, it was not a separate and distinct interest, but either one in common with his wife, or as a partner with her; and further that the plaintiff was estopped from claiming a separate and distinct interest in such property.

We will consider these claims separately and in the order above stated. In reference to the first: It appears that the complaint is in proper and unexceptionable form for such an action, assuming any action lies in such a case against an officer and his sureties upon the official bond. It claimed the only proper relief in such an action, namely, damages. The demurrer is as follows: " The defendants, Herman Quittner and William Ireland, demur to the prayer or claim for relief, because on the facts stated, the plaintiff is not entitled to the relief therein sought against them." In *Walko* v. *Walko*, 64 Conn., 74, 77, this court passed upon a similar demurrer and there said : " It is in no sense what it purports to be, a demurrer to relief. 58 Conn., 567, § 11. It is in direct contravention to General Statutes, § 873, which provides that 'all demurrers shall distinctly specify the reasons why the pleading demurred to is insufficient.' " The rule for proceedings under the Practice Act, referred to in the above quotation, is too plain to admit of justification of an attempt to nullify the statute quoted, in this way: " Where any relief demanded by the plaintiff cannot properly be demanded upon the allegations of the complaint, although these may be sufficient to call for some other relief, the defendant may demur to the relief so improperly demanded." This demurrer, so called, was therefore properly overruled ;. and the only claim sought to be made by the defendants under it, namely, that no form of liability was imposed upon them and no action whatever could be maintained against them by reason of the act alleged, was not before the court below. If, therefore, upon this question—which has in fact been fully argued before us by counsel representing both parties, and which we have fully considered—we were of opinion that the views of the defendants were correct, we ought not, for the reason above given, in justice either to the trial court or to the

plaintiff, on this ground, to disturb the judgment rendered. Since, however, we have reached the opposite conclusion in reference to the question, as it is of much practical interest and importance, and as there is no utterance of this court distinctly bearing upon it, although it has received frequent consideration in sister jurisdictions and by the Supreme Court of the United States, we have concluded that it will be proper for us to state our views regarding the matter.

The bond in suit, in the present case, is in the form prescribed by General Statutes, § 94. The condition is that the constable "will faithfully discharge the duties of his office and answer all damages which any person may sustain by his neglect or unfaithfulness in his discharge thereof." The question, as before stated, is whether the taking by the constable, upon a writ of attachment on *mesne* process, against one person, of the goods of another, is a breach of this condition of the official bond, for which the sureties upon such bond are liable.

This question, either in the precise form above stated, or forms which are clearly analogous, has received examination showing much divergence of views and difference in conclusions in other jurisdictions. Perhaps at present, the leading as well as one of the most recent cases upon the subject, is that of *Lammon* v. *Feusier*, 111 U. S., 17. The opinion, in which the entire court concurs, is by MR. JUSTICE GRAY. The citation and review of the earlier cases throughout the United States, is most exhaustive. The precise point decided was : " The taking, by a marshal of the United States, upon a writ of attachment on *mesne* process against one person, of the goods of another, is a breach of the condition of his official bond, for which his sureties are liable." The bond in the case cited, as in the one before us, was conditioned for the faithful performance of the officer's duties. The line of reasoning adopted by the court, to summarize it, is this: The official duty of the officer serving the writ is to take the property of the defendant, and of no one else. The taking of the property of another is a breach of such duty; but the act, being done in executing the process, is an attempt to perform

an official duty, and is an official act. While the person, other than the defendant, whose property is wrongfully taken, may indeed sue the officer, like any other wrong-doer, in an action of trespass to recover damages for the wrongful taking, the remedy of such person is not limited to such action against the officer personally. The official bond is not made to the person in whose behalf the writ is issued, nor to any other individual, but to the government for the indemnity of all persons injured by official misconduct, and such bond may be put in suit by and for the benefit of any such person. The court then refers to the decisions which hold that when property of a third person is thus taken, the rightful owner cannot maintain an action of replevin; nor recover the property specifically in any way except in the court from which the writ issued, and adds : " The principle upon which these decisions are founded is, as declared by MR. JUSTICE MILLER in *Buck* v. *Colbath*, 3 Wall., 334, 'that whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered as in the custody of the court, and under its control for the time being ; and that no other court has a right to interfere with that possession, unless it be some court which may have a direct supervisory control over the court whose process has first taken possession, or some superior jurisdiction in the premises.'"

The court then proceeds to review the decisions upon the "analogous question," concerning the liabilities of sureties upon the official bond of a sheriff, a coroner, or a constable. The conclusion reached is that upon the weight of authority as well as upon principle, the sureties are liable. In this conclusion, and mainly for the reasons stated, we concur.

It was urged before us by the defendants in the present case, that at the time when many of the decisions supporting the view above indicated were rendered, there were few statutes authorizing the replevying of goods from an officer, and that the goods attached, whether such attachment was rightful or wrongful, were supposed to be in the custody of the court. It was claimed that the lack of this remedy influenced many decisions, including *Lammon v. Feusier, supra*,

Town of Norwalk *v.* Ireland et al.

as alleged to be shown by the language to which we have referred. Attention was called to our present statute, which authorizes any person claiming the right to the possession of goods attached, to maintain replevin against an officer. It is true we have such a statute. But we think that upon this fact alone, no distinction which will support the plaintiff's contention can be based. It was in the unquestionable power of the legislature to confer the statutory right provided in General Statutes, § 1325. But doing so does not destroy, it does not affect, the established principle that property attached is in the custody, if not indeed ordinarily in this State of the court, of what is equivalent, of the law. Hence, as characterizing the taking, and proving that, while something for which trespass lies, it is not a mere trespass, the language of our decisions prior to the present existing extension of the statute in question, is just as significant and applicable as it ever was. Thus in *Bowen v. Hutchins*, 18 Conn., 550, 552, where it was held that a writ of replevin to obtain the restoration of goods attached in favor of a claimant who was not a party to the attachment, must be brought against the attaching creditor, and could not be sustained against the officer who served the attachment, it was said : " The goods, when attached, are taken by the officer in custody of the law. And if they were rightfully attached, they ought to be restored to that custody, that they may be disposed of, as the law directs. But the officer has no interest in the property. To him it is perfectly immaterial whether it belongs to the plaintiff in the original suit, or the plaintiff in the action of replevin. He has but to discharge his duty as a public officer." See also *Howard v. Crandall*, 39 Conn., 213 ; *McDonald v. Holmes*, 45 id., 157. We cannot hold that for such an act as that in question, the plaintiff would have had a remedy by action upon the bond if it had occurred a few years since, but that such remedy is taken away by force of the statute (General Statutes, § 1325) in relation to replevin. The language of CHIEF JUSTICE SHAW, in *City of Lowell v. Parker*, 10 Met., 309–313, a similar case to the present, is in point, and as much so now as it ever was. It was argued for the

sureties that they were no more liable than if the constable had acted without any writ. The court said: "He was an officer, had authority to attach goods on *mesne* process, on a suitable writ, professed to have such process, and thereupon took the plaintiff's goods. . . . He therefore took the goods *colore officii*, and though he had no sufficient warrant for taking them, yet he is responsible to third persons, because such taking was a breach of his official duty."

Coming to the defendants' second assignment of error— the refusal of the court to admit certain evidence upon the trial to the court on the merits, under an answer of denial— a statement of facts is essential, which facts will, some of them, be important also to consider when we reach the final assignment.

At the time of the attachment Louisa Fawcett, the plaintiff's wife, was engaged in conducting a millinery store with a miscellaneous stock of millinery goods therein. The defendant officer, with a writ of attachment against said Louisa, entered said store and attached the goods therein, including the goods belonging to the plaintiff, and carried the same away. When the officer entered the store said Louisa was there, the plaintiff was not. The officer stated to Louisa his mission, but did not make demand for goods to satisfy the writ. She touched a large show case filled with goods, saying, "Do not touch anything here; these do not belong to me." During the attachment the plaintiff came in and informed the officer that some of the goods in the store belonged to him, and asked that he might be allowed to see what he (the defendant) was taking, and make a list of the same. The request was denied. The goods of the plaintiff and of his wife were not kept separately, nor was there anything on or about the goods in said store to indicate to a stranger that they belonged to different owners. But there was no confusion of the plaintiff's goods with those of said Louisa, nor any fraudulent intent on the part of the plaintiff or said Louisa in mingling their goods together in the same store. Said Louisa paid the rent for said store, and employed and paid all the employees in the

store. The work of trimming the hats in the store, belonging to the plaintiff at the time of said attachment, and which were of the value of $300, had been performed by said Louisa and her employees, and she had also furnished some of the trimmings. It was understood between the plaintiff and Louisa, that when hats belonging to the plaintiff and which had been trimmed by the said Louisa and the employees in said store, should be sold, said Louisa should take from the proceeds of such sales whatever amount satisfied her for the trimming, and give the plaintiff the remainder. Said Louisa Fawcett and the plaintiff both testified as to the value of the plaintiff's said goods, and the value of said Louisa Fawcett's goods. Concerning the ruling now in question, the finding in full is as follows:—

"Said defendant, while testifying in his own behalf, identified a written memorandum, which he testified was an inventory of all the goods attached, made by him at the time of said attachment, partly from his own inspection of the goods and the tags or tickets thereon, and partly from information given him at the time by John Lockwood and Wilbur F. Young, who had been employed by him to assist in attaching and removing said goods. He testified that he could not specify any particular article in said inventory as one upon which he had seen a price mark, and could not say as to any particular item in said inventory, whether he had written it from his own examination of the article, or from information furnished him by one of his said assistants. He also testified that nearly all of the goods attached were marked, and that he used said inventory in making out his return on the writ. The defendants' counsel, for the purpose of further showing the manner in which said inventory was made, then read a portion of the deposition of said Wilbur F. Young, as follows:

"Q. Did you and Mr. Ireland take an inventory of the stock attached? A. We did.

"Q. Did you attach to this inventory any value of the stock? A. Yes.

" Q. Upon what was this value based? A. Upon the amount it would bring at forced sale.

" Q. Were, or were there not, any tags with prices marked upon them affixed to the goods attached? A. There were.

" Q. Were or were not these prices so affixed taken by you and Mr. Ireland in making up the value in the inventory? A. They were.

" The defendant then offered said inventory in evidence for the following purposes: (1) To contradict the plaintiff and his wife as to the value of the goods, she having testified that some of the goods were marked. (2) As a part of the *res gestæ.* (3) As descriptive of the property attached. (4) As tending to prove the value of said property. To the admission in evidence of said inventory the plaintiff objected and the court excluded the same, but ruled that the witness (said defendant) might use said inventory to refresh his recollection as to the number and description of the articles attached, and the prices marked thereon. The defendants duly excepted to the court's ruling in refusing to admit said inventory in evidence. The witness did use said inventory to refresh his recollection, and having so refreshed his recollection, testified as to the prices marked on 17 hats, 7 rolls of ribbon and 4 pieces of velvet trimmings. On cross-examination he testified that he had selected and testified concerning said 17 hats because, to the best of his belief, he had personally seen the price marks on one half of the whole number of hats named in said inventory, and, therefore, had selected from said inventory alternate hats to the number of 17 ; and again stated that he could not select from said inventory any specific article as one he had personally seen a price mark on at the time of the attachment. Thereupon the defendant again offered said inventory in evidence, but the court refused to admit the same, to which ruling the defendant duly excepted."

The general principles involved in the examination of the question thus presented, have been so recently and so fully stated by this court—*Curtis* v. *Bradley*, 65 Conn., 99—that it can serve no good purpose to do more than refer to them,

and to test this issue by the point of that decision (p 114), namely: "A memorandum of details which are essential to the full proof of a transaction at issue, proved to have been made substantially at the time of the transaction, and under such circumstances that the memorandum can make a correct statement of such details as they were then known to the person who made the memorandum or saw it made, and who is himself a witness and testifies to the transaction, but has lost all recollection of such details, is in connection with the testimony of such witness admissible as evidence." Tested by this rule the inventory in question fails in one, and that the most vital particular, to be admissible. The memorandum was not proved to have been made under such circumstances as to make a correct statement of details as they were then known to the witness who made the memorandum. It testifies to matters to which the witness is unable himself to testify, not from lack of recollection, but from want of personal knowledge. No case in any jurisdiction has gone so far as to admit memorandums which fail in this essential. "How far papers, not evidence *per se,* but proved to have been true statements of fact, at the time they were made, are admissible in connection with the testimony of a witness who made them, has been a frequent subject of inquiry." *Curtis* v. *Bradley, supra,* p. 107. But it has never, so far as we know, been seriously claimed that such papers could even be used at all, by a witness under examination, except to refresh his memory, or to assist him to testify to something which he once knew to be true. This being so, it will appear that if the present case presented the question, it would be much more doubtful whether the court below did not err in permitting the defendant to go so far in his use of the inventory in connection with his evidence, than it is whether the defendant was injured by its exclusion as itself evidence.

The inventory was, as we have seen, claimed to be admissible for four purposes, or on four grounds. One of these was "as a part of the *res gestæ.*" Manifestly this is independent of the question of the defendant's knowledge of the

details in the memorandum, and it is equally evident that· the claim has no foundation. Taking the definition of the term adopted by this court in *Stirling* v. *Buckingham*, 46 Conn., 461, 464, 465,—" the circumstances, facts and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character,"—it is clear that no illustration of the character of the taking of the property of a stranger to the suit, is derived from this inventory, nor did it " grow out of the main fact," in the sense in which that expression is used in this definition. But it was claimed also to contradict the plaintiff and his wife as to the value of the goods, she having testified that some of the goods were marked. But the defendant also testified that some were marked. The trouble was, the inventory, before us as an exhibit, does not show which of the goods were marked. The defendant could not specify any article in said inventory as one on which he had seen a price mark, and could not say as to any item whether he had written it from his own examination, or from information furnished him by one of his assistants. One of these assistants only was called. His evidence perhaps bears more closely upon another claim of the defendants, that the inventory was admissible as tending to prove the value of the property. But he testified that the value attached to the stock in the inventory was based upon the amount it would bring at forced sale ; that is, of course, what the witnesses, or perhaps the officer and his assistants collectively, believed, estimated or surmised that it would bring at such sale. But we know of no rule of law to the effect that a trespasser is authorized to convert property upon such valuation. It is true, this witness also stated that some of the goods had tags with price marks affixed, and that these were taken in making up the value of the inventory. But this was all. Finally, the inventory was claimed as descriptive of the property attached. But the same want of knowledge on the part of the witness is evident here throughout. The court in its above ruling committed no error prejudicial to the defendants.

The remaining assignment of error embraces several distinct claims. It is for that reason defective. *Simmonds* v. *Holmes*, 61 Conn., 9. But waiving this, we discover no error here. It is true, as this court said in *Gilligan* v. *Lord*, 51 Conn., 562–567, that " the relation of husband and wife gives special opportunities for fraudulent transfers of property, and therefore transactions between them are open to a special suspicion." But this is a consideration to be regarded by the trial court in reaching its conclusions of fact, and we find no ground on which to hold that it was not regarded by such court in this case. It is true, also, as this court further said in the case above cited, that the statement quoted holds only in relation to actual fraud. The court has found, and we are bound by the finding, that none existed; that there was no fraudulent intent on the part of said Louisa or of the plaintiff, in mingling their goods together in the same store. Further, as bearing upon this and the claim of estoppel, it does not appear that any creditor was misled to his harm by the plaintiff's conduct. There is nothing to show that either the plaintiff in the attachment suit, or any one else, gave credit to the wife on the strength of her apparent ownership of what was in this case held to be the plaintiff's property. Indeed, though this is perhaps not very material, the plaintiff in the attachment suit against the wife, had no valid cause of action. *Banash* v. *Fawcett*, 66 Conn., 598. Nor was the defendant officer misled by the present plaintiff. He made no demand upon Mrs. Fawcett to turn out goods to satisfy his writ. She pointed out a show case full of goods, saying, " Do not touch anything here; these do not belong to me." The plaintiff then came and informed said defendant that some of the goods in the store belonged to him, the plaintiff. He asked and was refused to be allowed to see what said defendant was taking, and to make a list of the same. Surely if the defendant officer is in the condition of those who are said in Holy Writ, " to be destroyed for want of knowledge," it is for the same reason—because he rejected it.

But finally, it is asserted that the finding shows, as a mat-

ter of law, that if the plaintiff had any interest in the goods attached, it was either one in common, or as a partner with his wife.    No doubt if such were shown to be the plaintiff's interest, the attachment would be justified.    *Stevens* v. *Stevens*, 39 Conn., 474, 480.    Doubtless also, where the terms of the agreement and the facts all appear, whether or not a partnership existed, is a question of law for the court to decide.    *Morgan* v. *Farrel*, 58 Conn., 413, 423.    But taking the facts as found, and assuming full right to pass upon them, we cannot say that they show either a partnership or a tenancy in common in the goods attached, between the plaintiff and his wife; not a partnership under any principle laid down, rule stated, or test applied in the cases on which the defendants rely; *Parker* v. *Canfield*, 37 Conn., 250, 266; *Tyler* v. *Waddingham*, 59 id., 375, 383; not a tenancy in common under any existing definition of such term, nor by the application of the clear test of such holding stated by this court in *Griswold* v. *Johnson*, 5 Conn., 363, 365.

There is no error in the judgment complained of.

In this opinion the other judges concurred.