■The question of law here presented is: Do the heirs at law of Lydia A. Thompson, deceased, take the undivided one-half of the estate in question, or, was there a compact by and between :said Lydia A. Thompson and her husband, David Thompson, made in their lifetime, by the terms of which they executed twin wills, and do the plaintiffs and the other beneficiaries named in said wills take thereunder?
Said David and Lydia Thompson were husband and wife, having no living issue, or descendants, hut each had collateral kindred. They owned in fee simple, as tenants in common, the property in question. It was agreed orally by and between said husband and wife, that whichever one survived the other, the survivor should have and enjoy the real and personal estate of the other for and during his or her natural life, and at the *440 death of said survivor said estate, not only of the first decedent but also of said survivor, should be-converted into money, and divided in the proportions and among the parties named therein. The agreement then goes on and names the collateral kindred of the blood of both parties, and specifies the percentage of said money that each should take. In pursuance of said agreement, and in conformity therewith, said David and Lydia Thompson, on the 4th day of March, 1892, executed in due form of law twin wills — precisely alike as to the rights of said survivor, and as to the names of the beneficiaries, and the proportion of the estate which each beneficiary should enjoy. That is, the will of Lydia gave the same rights to said David in her property in case he survived her, as his will gave to her in case she survived him, and said Lydia’s will provided that at the death of said David, in case he survived her, her estate should be converted into money and pass to the same beneficiaries, and in the same proportions as is provided in the will of said David concerning his property in case said Lydia survived him. In other words, said wills were as nearly alike as it was possible to draw them in order to carry out the purpose of said David and Lydia as heretofore stated.
Both of these wills were left in the custody of the attorney who drew them. Said David died first, which was about March 9, 1892, seized of an individual one-half in fee simple of said real estate, leaving said Lydia his widow, and his said will in full force and effect. Thereupon said Lydia, about March 21, 1892, caused the will of said David to be probated, and she administered upon his estate. She used and enjoyed the income from said estate during her natural life. Said widow died sometime in May, 1902, seized of an individual one-half in fee simple in said real estate, she not having re-married, and without having, made any other will, or disposed of her estate, or the estate of said David.
The will of said Lydia remained in the possession of said attorney for about five years after its execution, and until about the year 1897, when said Lydia took said will from the custody of said attorney, stating to him that she was going to deposit it in a bank in north Columbus. She afterwards re *441 moved all her papers from said bank, and it is not known what ultimate disposition she made of said will. It can not now be found, and it is not known to have been in existence since her death. This real estate has been sold since the death of said widow, and the proceeds therefrom are now in the custody of this court awaiting distribution. All of the beneficiaries named in said wills are parties herein, and are claiming the fund arising from the sale of said real estate according to the provisions of said wills, except Maude V. Minor. And all the heirs of said Lydia Thompson are also parties defendant and are claiming one-half of the proceeds of said sale as heirs at law of said Lydia Thompson, deceased.
It is conceded in argument by plaintiff’s counsel that a joint will, or twin wills, which were produced, could be enforced if there was a valid consideration, but he contends that such is not the rule where one of the two wills is not in existence.
There is no question but that the weight of authorities uphold joint or mutual wills made and executed in compliance with a contract between the parties thereto. Where the parties are competent and free to act, with a sufficient consideration, and mutuality, wills concurrently executed are supported by the authorities. Defour v. Peraso, 1 Dickens Chancery Rep., 419, is a leading ease on this subject, and counsel quote from it at length. The court there say:
‘ ‘ There must be mutuality. The mutuality must run through the whole of both wills, and through every part of each will. A reciprocity must pervade both'Wills. The property of both is put into a common fund, and every devise is the joint devise of both. The two wills must be concurrently executed. They could not be twins unless they were executed at the same time, or within a reasonably short time of each other. ’ ’ ,
It is objected in the case at bar that the evidence is insufficient to prove the contract, or when or where it was made; that the oral agreement is in contravention of the statute of frauds, barred by the statute of limitations, and is not supported by a sufficient consideration.
As to the character of evidence necessary, it is held that—
*442 “The same kind of evidence by which contracts are proved may be used. They must be proved by matter apparent on the ¡surface of the wills, manifestly an agreement, as by express .statements therein, that the wills are made pursuant to an agreement, or by a mutuality of testamentary intention appearing in each will sufficient to show such an agreement, or by extrinsic evidence outside of the wills, disclosing the terms of the contract” (Edson v. Parsons, 32 N. Y. Sup., 1036).
There is no question but that an oral agreement if sufficiently proven will constitute a compact between the parties to support mutual wills, if not objectionable for other reasons.
In addition to other authorities, that was so held by the circuit court of this circuit in the unreported ease of Pancake v. Pancake et al, in Madison county, in 1893. It was there held that it need not be in writing.
The oral compact to make mutual wills being established by sufficient evidence, and it appearing that the consideration is sufficient, and the parties otherwise complying with the legal requirements prescribed, then the wills speak for themselves. The bar of the statute could not begin to run from the date of the oral compact, because the contract is not consummated until the death of the survivor. While both parties are living they can revoke it at any time. Or, one of the parties during the life of both can revoke it, provided he notify the other party, in order that the latter may have an opportunity to dispose of his or her estate in some manner other than that of complying with the compact. Rut after the death of either party, then the survivor can not revoke the compact. Equity will then enforce it. This is because while one of the parties in compliance with the contract has performed his part, and after his death the survivor is deriving the benefit of such compliance, the latter, or his or her representatives or heirs, could not then stand in a court of equity in an appeal to uphold an act revoking the compact. A strict compliance therewith will be required. This is the rule laid down in Defour v. Peraso, supra.
“If made in pursuance of a contract, the will itself may be revoked, but the contract in pursuance of which the will was *443 made may be enforced in an action at law for damages, or in a suit in equity to have those taking the legal title after the death of the.promissor, held as trustee'” (Paige on Wills, Section 69).
This author further says, Section 72:
“A promise by one to make a certain disposition of property by will on consideration that another person would likewise make a specific disposition of his property -by will has been held to be supported by a valid consideration.”
The same rule is laid down in Crobut v. Layton, 68 Conn., 9; Schueler on Wills, Section 455.
It is too late after the promissor has received the benefit to change his mind. The first will is then probated, and it is too late to revoke it, and it was because of the promise made by the survivor that the first will was made as it was. It was by his inducement and promises that it was made for his benefit, and it is unnecessary to multiply authorities or reasons why the survivor can not revoke his will under such circumstances.
Now, the only remaining question here is, does the fact that Mrs. Thompson’s will is lost, and has not been produced, operate to annul this contract, and permit her heirs at law to take this property?
There is no question but that the mutual execution of these wills and their contents must be conclusively proven, and there is no doubt but that the rule that the production of the wills themselves is the best evidence to prove such.
We have here the evidence of the agreement between these parties to make mutual wills. The evidence shows a sufficient consideration therefor. The survivor was to take the whole of the other’s estate for life. Upon the decease of the survivor we have the stipulation as to who were to be the beneficiaries, and the proportionate part each was to take. The evidence also ¡shows that in pursuance of this - agreement both of said parties did, on the same day, execute in due form of law twin wills, precisely alike as to the rights of the survivor, and as to the names of the beneficiaries, and the proportion of each. There is no question as to the evidence proving the exact contents of Mrs. Thompson’s will, and that it was duly and form *444 ally executed at the same time that Mr. Thompson executed his will. Sufficient foundation has been laid for establishing these facts by secondary evidence, and they are, in my opinion, conclusively proven.
E. E. Corwin, for plaintiff.
B. Woodbury, for defendant.
In the face of this evidence it would be a dangerous rule that |J would annul a contract of this character because the other will could not be produced. If the fact that the will was not executed at the same time the probated will was executed, or, if the contents of the lost will were not clearly proven, there would then be some reason to claim that the contract could not be enforced. But the evidence here does not warrant any such holding. For the above reasons, I find in favor of the enforcement of said compact and against the claims of the heirs of said Lydia Thompson, and that said estates of the said David and Lydia Thompson be distributed according to the provisions of said twin wills. It-is ordered that the funds arising from the sale of said real estate, and the proceeds of whatever personal estate remains be added to said funds, and after paying the debts of said Lydia Thompson, the remainder be distributed among the beneficiaries named in- said wills, in the proportions as therein provided.