**In re Herbert A. BAHRE, Bankrupt.**

**Howard L. SIEGEL, Trustee in Bankruptcy, Plaintiff,**

v.

**Herbert James BAHRE, Defendant.**

**Bankruptcy No. B–79–31.**

United States Bankruptcy Court,
D. Connecticut.

Oct. 5, 1982.

---

**6.** The Landlord and Tenant Act of 1951, April 6, P.L. 69, 68 Pa.Stat.Ann. § 250.101 *et seq.* (Purdon).

cut to his son, the defendant, Herbert James Bahre.

The essential allegations of the trustee's complaint are as follows:

"5. At the time of said conveyance, there were creditors of said Bankrupt in existence and such creditors then and as of the date of the filing of the bankruptcy petition herein held claims against the Bankrupt provable under the Bankruptcy Act.

6. Said conveyance was made by the Bankrupt without fair consideration, rendered the Bankrupt insolvent and is fraudulent as against creditors of the Bankrupt having claims provable under the Bankruptcy Act."

## II.

Under Bankruptcy Act section 70(e)(1)

A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor having a claim provable under this Act, shall be null and void as against the trustee of such debtor.

Since section 67(d)(2), the relevant portion of the Bankruptcy Act on the subject of fraudulent conveyance, is only applicable when a transfer was made within one year prior to the filing of the petition, it would appear that there is no federal law on this subject applicable in these proceedings. Under Connecticut law, however:

All fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs.

*Conn.Gen.Stat.Ann.* § 52–552 (West 1960).

In order to construe the reach of that provision guidance is sought from applica-

Julia L. Aurigemma, Hoberman, Pollack & Roseman, P. C., Hartford, Conn., for plaintiff.

Ira Charmoy, Levin & Charmoy, Bridgeport, Conn., for defendant.

## MEMORANDUM AND ORDER

ALAN H. W. SHIFF, Bankruptcy Judge.

## I.

On August 31, 1978, Herbert A. Bahre (bankrupt) filed a petition for relief and was adjudicated a bankrupt under the Bankruptcy Act of 1898. This proceeding was brought by the trustee in bankruptcy to set aside a January 7, 1976 conveyance by the bankrupt of his residence known as 133 East Mountain Road, Canton, Connecti-

ble Connecticut law. In *Town Bank & Trust Co. v. Benson*, the Connecticut Supreme Court stated "To prove that the conveyance was fraudulent ... the plaintiff had the burden of establishing that the conveyance was made without any substantial consideration and, when made, rendered the [grantor] unable to pay her then existing debts, or that it was made with fraudulent intent in which the grantee participated." 176 Conn. 304, 307, 407 A.2d 971, 973 (1978) (citations omitted); *see, e.g., Second National Bank v. Harris,* 122 Conn. 180, 187 A. 910 (1936). Connecticut case law further establishes the rule that, contrary to the plaintiff's contention,[1] intrafamily conveyances do not shift the burden of proof to the defendant-transferee. Thus, as held by the court in *Fishel v. Motta*, 76 Conn. 197, 200, 56 A. 558, 559 (1903):

> The plaintiffs claim that in conveyances between husband and wife, as here, there is, in the absence of evidence to the contrary, a legal presumption of want of consideration; and that upon the facts in this case, under such a rule of presumption, want of consideration was proved. Such a rule makes the mere relation of husband and wife in such cases, as a matter of law, in the absence of any evidence to the contrary, *prima facie* proof of want of consideration.
>
> That the relation of husband and wife gives special opportunities for fraudulent transfers of property, and that conveyances between them "should be subjected to a rigorous scrutiny," are considerations to be addressed to the trier in passing upon the question of want of consideration. *Gilligan v. Lord*, 51 Conn. 562, 567; *Norwalk v. Irland*, 68 id. [Conn.] 1 [35 A. 804]; *Throckmorton v. Chapman*, 65 id [Conn.] 441 [32 A. 930]. Any presumption of want of consideration in such cases is one of fact having simply the force of an argument. "The difference between a

presumption of fact and one of law, as these terms are commonly used, is that the former may be, the latter must be regarded by the trier." *Ward v. Metropolitan Life Ins. Co.,* 66 Conn. 227, 239 [33 A. 902]. We are not aware of the existence in the law of this State of any such legal presumption as the plaintiffs claim.

## III.

The credible evidence in the instant proceeding established and I find that at the time the bankrupt transferred his residence to the defendant, he had existing debts to the Connecticut Bank and Trust Company, which are provable under the Act. The questions then are (a) whether the Bankrupt was insolvent at the time he conveyed his residence to the defendant and (b) whether the consideration for the residence was adequate.

### (a)

#### Solvency of Bankrupt

■ According to the defendant's testimony, his father had a going business when he conveyed his residence. The business consisted of an active stable of approximately 60 horses and approximately 20 ponies which were rented to the public. The defendant recalled visiting the bankrupt on several occasions and seeing the horse back riding business in full operation. Even assuming the defendant's memory was accurate, there was no basis in the evidence for the court to calculate the net profit, if any, which was realized from the business or how much the business was worth. The bankrupt, on the other hand, testified during his Rule 205 examination on November 30, 1978 that after his wife died in 1975, he sold everything. Furthermore, the bankrupt's petition failed to disclose any income during the six calendar years immediately preceding the filing. Similarly, the bank-

---

1. I reject the plaintiff's contention that in *D.H.R. Construction Company v. Donnelly*, 180 Conn. 430, 429 A.2d 908 (1980), the court "adopted a new rule concerning the burden of proof." (Plaintiff's brief, p. 7). The oblique reference to burden of proof made in *D.H.R. Construction Company*, arising in a unique fac-

tual context, cannot be said to alter the rule as stated in a long and clear line of Connecticut cases or, in any event, to apply under the circumstances here. Whether a presumption shifts the burden of proof in this proceeding is determined by applicable state law. *See* Fed.R. Evid. 302; Bankruptcy Rule 917.

rupt's income tax returns did not disclose any income for the two years immediately preceding the filing.

The defendant also testified that there was a gentlemen's agreement between the bankrupt and another son regarding an equitable interest the bankrupt allegedly had in the son's farm property across the street from the subject property. As a result of that agreement, the bankrupt allegedly received $10,000 sometime after the conveyance in question. Here again testimony from the bankrupt in earlier proceedings fails to corroborate that claim. In fact the bankrupt mentioned that $10,000 in the context of other gifts by his children.[2]

The principal basis for the defendant's claim that the bankrupt was solvent at the time of the conveyance rests upon the bankrupt's testimony during his Rule 205 examination.[3] I find that testimony is inconsistent with his earlier testimony during the first meeting of creditors and incredible.

The bankrupt testified during his 205 hearing that on January 7, 1976, he had $140,000 in one hundred dollar bills in his pocket,[4] but by the time he filed his petition on August 31, 1978, all he had was property valued at $900. The explanation by this seventy plus year old man that he spent virtually all of the $140,000 on "wine, women and song"[5] is difficult to believe. His claim that he carried all of that money in one hundred dollar bills in his pocket is even more dubious.

It should be observed that the bankrupt was no stranger to banks, having borrowed, according to his testimony, "over half a million dollars from them".[6] Why then didn't he put any of the money in one of those banks? Aside from the obvious safety features, he would have earned considerable interest. Having in mind that the alleged cash was his only asset aside from two automobiles, logic would suggest that course of action. Moreover, if the bankrupt had all that cash, why did his children give him gifts so he could take vacations and why did he continue to borrow from the Connecticut Bank and Trust Company and the Simbury Bank and Trust Company during that period. Testimony during this trial from an officer of the Connecticut Bank and Trust Company disclosed that on January 19, 1976, the bankrupt renewed a note for $3400. Other testimony from an agent of the Simsbury Bank and Trust Company indicated that earlier notes were renewed on March 15, 1976 and May 25, 1976. The bankrupt's explanation that "they offered it, why not take it?"[7] is not persuasive.

It is more likely that the bankrupt's earlier testimony at the first meeting of creditors is the accurate account of his assets at the time of conveyance. At that time, which was prior to the institution of the instant proceeding,[8] he stated, and I find, that the only assets he owned at the time of the conveyance were two automobiles.

> Q And where is that money?
> A In hundred dollar bills in my pocket. I done a cash business.
> Q You had $140,000 in one hundred dollar bills in your pocket on that date?
> A Yes, yes. You don't own that, that is just a convenience.

**2.** Transcript of Rule 205 examination, November 30, 1978 (examination), p. 13.

**3.** It should be noted that the plaintiff served a subpoena upon the bankrupt to testify at the trial of this proceeding. By his August 16, 1982 letter, the bankrupt declined to appear, citing a lack of transportation and his poor physical condition.

**4.** Examination p. 3
> Q Well, what did you own on January 7, 1976?
> A Well, I had all this money I owned.
> Q What did you own on January 7, 1976? Describe exactly what you owned on that date.
> A Well, I had—I mostly—
> Q How much money did you have on that date?
> A Well, it's figured up to $140,000.

**5.** Examination, p. 9

**6.** Examination, p. 15

**7.** Examination, p. 15

**8.** The first meeting of creditors was held on September 12, 1978. The complaint in the instant proceeding was filed on September 21, 1978.

As to liabilities at the time of the transfer, the bankrupt had unsecured debts in excess of $10,000 and a secured debt of approximately $21,000. Accordingly, having found that the bankrupt's assets consisted of two automobiles at the time of the conveyance, I conclude the bankrupt was rendered insolvent by that transfer.

### (b)

### Adequacy of Consideration

 Turning to the element of consideration as the second prong of constructive fraud under Connecticut's fraudulent conveyance statute, I conclude that the bankrupt did not receive substantial consideration for his residence, as required by *Town Bank & Trust, supra.* The bankrupt only received the benefit of the assumption of a $21,000 mortgage on the property. On the other hand, evidence adduced during the hearing demonstrated that the property had a value of approximately $85,000 at the time of transfer.

### IV.

I accordingly conclude that the plaintiff has proved constructive fraud under Conn. Gen.Stat. § 52–552, and it is

ORDERED that judgment enter in favor of the plaintiff, setting aside the January 7, 1976, conveyance of the bankrupt's residence to the defendant.