JOSEPH ANTINERELLA ET AL. *v.* ALFRED J.
RIOUX ET AL.
(14734)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued February 17—decision released May 31, 1994

*Timothy Brignole,* for the appellants (plaintiffs).

*Michael J. Lanoue,* assistant attorney general, with whom were *Margaret Quilter Chapple,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellees (defendants).

KATZ, J. The plaintiff, deputy sheriff Joseph Antinerella,[1] an at-will employee, sued the defendant, Alfred J. Rioux, as an individual and in his capacity as high sheriff of Hartford county, for wrongfully terminating the plaintiff's employment for the alleged purposes of misappropriating the plaintiff's business of serving process and furthering the defendant's own illegal fee splitting enterprise. The principal issue on appeal is whether the trial court properly dismissed the suit on the grounds that the doctrine of sovereign immunity and the immunity provisions of General Statutes § 4-165 shielded the defendant from suit in his

---

[1] Louri Antinerella, Joseph Antinerella's wife, is also a plaintiff in this case. She seeks damages for the deprivation of the services, support and consortium of her husband. Because her claim is wholly derivative of Joseph Antinerella's and will thus survive or be barred according to the disposition of the issues on appeal as applied to him, this opinion does not refer to her separately in her role as plaintiff.

capacity as sheriff and as an individual, respectively.[2] Because we conclude that the defendant's alleged conduct exceeded his authority and was outside the scope of his employment as high sheriff, he is not immune from suit. Accordingly, we reverse.

The plaintiff brought a five count complaint seeking damages and injunctive relief against the defendant individually and in his capacity as sheriff for: (1) violation of the Connecticut Unfair Trade Practices Act (General Statutes § 42-110a et seq.); (2) tortious interference with the plaintiff's contractual relationships; (3) racketeering activities; (4) illegal conspiracy; and (5) breach of contract. The plaintiff alleged in each of the five counts in his complaint the following facts that, for the purposes of this appeal, we consider to be accurate. From 1980 through 1991 the plaintiff maintained a highly profitable business with clients statewide as a deputy sheriff serving process and papers and executing process in Hartford county. To assist him in this business, the plaintiff employed Lori Chirico as a secretary to handle collections, type returns of service and deal with clients. As a result, Chirico became thoroughly familiar with all of the plaintiff's accounts and customer lists.

In 1990, the defendant hired Chirico as his personal secretary, although his appointment of her as a special deputy[3] allowed him to pay her with state funds. At or around the same time, the defendant entered into agreements with several deputy sheriffs he had appointed. Under the agreements, the defendant was to forward business he had obtained from law firms and

---

[2] The plaintiff appealed from the judgment of dismissal of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[3] As a special deputy, Chirico was required by statute to transport prisoners, maintain the orderly form of the court and, in the event of a riot, be available to suppress it. See General Statutes § 6-43.

state agencies to designated deputy sheriffs who would thereafter serve process, and, in turn, pay him 40 percent of the statutory rate in violation of General Statutes §§ 6-46 and 53a-161c.[4]

Each count contained the critical allegation that the defendant, after forming the agreement with the deputy sheriffs, terminated the plaintiff's employment for the purposes of obtaining the plaintiff's business and personally benefiting from the forbidden and illegal fee splitting arrangements the defendant had devised. Thereafter, the plaintiff, on the basis of these shared facts, asserted particular legal claims accompanied by additional supporting allegations. The plaintiff claimed that the defendant, by his illegal conduct, tortiously interfered with the plaintiff's contractual relationships and breached his employment contract. The plaintiff further alleged that the defendant's efforts to engage in unfair methods of competition and unfair and deceptive acts or practices in the distribution of service of process, and the restraint, termination and confiscation by the defendant of the plaintiff's business for his own personal gain were in violation of General Stat-

[4] General Statutes § 6-46 provides: "SHERIFF MAY RECOVER ON BOND OF DEPUTY. NOT TO DEMAND FEE FROM DEPUTY. If any sheriff is sued on account of the default of his deputy, he may recover on the bond of such deputy fifteen dollars in addition to the amount recovered from him or which he has been compelled to pay on account of such default. If any sheriff demands or receives any compensation from any deputy, he shall, by the superior court in the county for which he is sheriff, on the information of the state's attorney, be removed from office and adjudged forever disqualified to hold the office of sheriff."

General Statutes § 53a-161c provides: "RECEIVING KICKBACKS: CLASS D FELONY. (a) A person is guilty of receiving kickbacks whenever he by force, intimidation or threat of procuring dismissal from employment induces any person who is employed in the construction, completion or repair of any public building, public work, or building or work financed in whole or in part by loans or grants from the state, or who has a contract with the state, to give up any part of the compensation to which he is entitled.

"(b) Receiving kickbacks is a class D felony."

utes § 42-110b[5] et seq. Moreover, the plaintiff claimed that the defendant, by having engaged in racketeering activities in violation of General Statutes §§ 53a-159, 53a-161 and 53a-161c,[6] caused him serious economic and personal injury in violation of General Statutes § 53-395 et seq.[7]

[5] General Statutes § 42-110b provides: "UNFAIR TRADE PRACTICES PROHIBITED. LEGISLATIVE INTENT. (a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

"(b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)), as from time to time amended.

"(c) The commissioner may, in accordance with chapter 54, establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section. Such regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act.

"(d) It is the intention of the legislature that this chapter be remedial and be so construed."

[6] General Statutes § 53a-159 provides: "BRIBE RECEIVING BY A LABOR OFFICIAL: CLASS D FELONY. (a) A labor official is guilty of bribe receiving by a labor official if he solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that such benefit will influence him in respect to any of his acts, decisions or duties as such labor official.

"(b) Bribe receiving by a labor official is a class D felony."

General Statutes § 53a-161 provides: "RECEIVING A COMMERCIAL BRIBE: CLASS A MISDEMEANOR. (a) An employee, agent or fiduciary is guilty of receiving a commercial bribe when, without consent of his employer or principal, he solicits, accepts or agrees to accept any benefit from another person upon an agreement or understanding that such benefit will influence his conduct in relation to his employer's or principal's affairs.

"(b) Receiving a commercial bribe is a class A misdemeanor."

See footnote 4 for General Statutes § 53a-161c.

[7] General Statutes § 53-395 provides: "PROHIBITED ACTIVITIES. (a) It is unlawful for any person who has knowingly received any proceeds derived, directly or indirectly, from a pattern of racketeering activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the

The defendant moved to dismiss the plaintiff's complaint, arguing that the action against him in his official capacity was barred by the doctrine of sovereign immunity and that the action against him in his individual capacity was barred by the immunity provisions of General Statutes § 4-165.[8] The trial court granted the defendant's motion and dismissed the plaintiff's complaint. The trial court in its memorandum of decision concluded that the defendant was personally immune from suit because, pursuant to §§ 6-37 and

investment or use thereof, in the acquisition of any title to, or any right, interest or equity in, real property or in the establishment or operation of any enterprise.

"(b) It is unlawful for any person, through a pattern of racketeering activity or through the collection of an unlawful debt, to receive anything of value or to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

"(c) It is unlawful for any person employed by, or associated with, any enterprise to knowingly conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity or through the collection of an unlawful debt."

[8] General Statutes § 4-165 provides: "IMMUNITY OF STATE OFFICERS AND EMPLOYEES FROM PERSONAL LIABILITY. No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter. For the purposes of this section 'scope of employment' shall include, but not be limited to, representation by an attorney appointed by the public defender services commission as a public defender, assistant public defender or deputy assistant public defender or an attorney appointed by the court as a special assistant public defender of an indigent accused or of a child on a petition of delinquency, representation by such other attorneys, referred to in section 4-141, of state officers and employees, in actions brought against such officers and employees in their official and individual capacities, the discharge of duties as a trustee of the state employees retirement system, the discharge of duties of a commissioner of superior court hearing small claims matters or acting as a fact-finder, arbitrator or magistrate or acting in any other quasi-judicial position, and the discharge of duties of a person appointed to a committee established by law for the purpose of rendering services to the judicial department; provided such actions arise out of the discharge of the duties or within the scope of employment of such officers or employees. For purposes of this section, members or employees of the

6-45,[9] the high sheriff has the unlimited statutory authority to hire and fire a deputy sheriff "at his pleasure regardless of his motives or the propriety of his reasons for such dismissal." The trial court also noted that, to defeat the doctrine of sovereign immunity, the plaintiff had to point to a legislative enactment indicating the state's consent to be sued. The trial court concluded that the plaintiff's reliance on General Statutes §§ 6-30 and 6-30a[10] was misplaced, and, that

soil and water district boards established pursuant to section 22a-315 shall be considered state employees."

[9] General Statutes § 6-37 provides: "DEPUTIES. CHIEF DEPUTY. Each sheriff may appoint deputies to act under him, who shall have the same powers as such sheriff to serve civil process, and each such deputy shall be responsible for his neglect, wrongdoing, malfeasance, misfeasance and default in the execution of the service of process. Each sheriff shall appoint one of such deputies to be a chief deputy, who shall, in the absence, illness or disability of the sheriff or by his direction, exercise all the powers and perform all the duties of the sheriff prescribed by statute; and, in the event of the death, resignation or removal of the sheriff, shall exercise such powers and perform such duties until the vacancy in the office of sheriff has been filled."

General Statutes § 6-45 provides: "APPOINTMENTS AND REMOVAL OF DEPUTIES. Appointments of deputy sheriffs shall be in writing, under the hand of the sheriff, and recorded in the records of the superior court in the county for which they are appointed. The sheriff may, at his pleasure, dismiss from office the deputies appointed by him, but only upon his delivering to the person removed a written discharge and filing a copy thereof with the clerk of the superior court in such county for record in the records of said court."

[10] General Statutes § 6-30 provides: "BOND. No person shall enter upon the duties of sheriff until he executes a bond of ten thousand dollars, to the acceptance of the governor, payable to the state, conditioned that he will faithfully discharge the duties of his office, including his duties when serving as deputy of another sheriff under the provisions of section 6-38, and answer all damages which any person may sustain by his unfaithfulness, malfeasance, wrongdoing, misfeasance or neglect; and the governor may, at any time, demand of any sheriff a new bond and, on neglect or refusal to give it, such sheriff shall be considered to have resigned his office. Each sheriff shall receive a commission and his bond shall be lodged with the secretary and recorded in the records of the state and a copy thereof, certified by the secretary, shall be evidence of its execution."

General Statutes § 6-30a provides: "PERSONAL LIABILITY INSURANCE. Each sheriff and deputy sheriff, on or after October 1, 1976, shall be required to carry personal liability insurance for damages caused by reason of his

in the absence of any other provision expressly authorizing suit against the sheriff for wrongful termination of employment, the doctrine of sovereign immunity insulated the defendant from suit in his official capacity.

On appeal, the plaintiff argues that because the defendant fired him to further his own financial gain through a fee splitting agreement with various deputy sheriffs in violation of General Statutes §§ 6-36 and 6-46,[11] the defendant exceeded his authority as high sheriff and, therefore, cannot claim the protection of sovereign immunity.[12] The plaintiff similarly contends that because the defendant's behavior exceeded the scope of his employment, the defendant cannot claim the personal immunity afforded by § 4-165. Finally, the plaintiff argues that the express exception contained

tortious acts in not less than the following amounts: For damages caused to any one person or to the property of any one person, one hundred thousand dollars and for damages caused to more than one person or to the property of more than one person, three hundred thousand dollars. For the purpose of this section 'tortious act' means negligent acts, errors or omissions for which such sheriff or deputy sheriff may become legally obligated to any damages for false arrest, erroneous service of civil papers, false imprisonment, malicious prosecution, libel, slander, defamation of character, violation of property rights or assault and battery if committed while making or attempting to make an arrest or against a person under arrest; provided, it shall not include any such act unless committed in the performance of the official duties of such sheriff or deputy sheriff."

[11] General Statutes § 6-36 provides: "REMOVAL FROM OFFICE BY GENERAL ASSEMBLY. If any sheriff (1) knowingly demands or receives illegal fees for serving process, (2) illegally detains any money collected by him or (3) refuses to satisfy any execution issued against him, the general assembly shall remove him from office. The terms 'knowingly demands' and 'receives,' as used in this section, include billing for and the receipt of fees for work by a sheriff who did not actually perform the work for which billing is made or for which payment has been received."

See footnote 4 for General Statutes § 6-46.

[12] The plaintiff also relies on General Statutes §§ 6-30 and 6-30a as authorizing his claim. Because we agree with the plaintiff that the defendant's conduct, if proved, exceeded his authority and that sovereign immunity therefore does not bar the action, we do not decide whether either of these statutes provides the express consent of the state to be sued, as the plaintiff suggests.

in § 4-165, eliminating immunity for a state employee acting in a wanton, reckless or malicious fashion, precludes the defendant from asserting the immunity defense. We agree with the plaintiff and therefore conclude that the trial court should not have dismissed the complaint.

I

" 'We have . . . recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state.' *Sentner* v. *Board of Trustees,* 184 Conn. 339, 342, 439 A.2d 1033 (1981). In its pristine form the doctrine of sovereign immunity would exempt the state from suit entirely, because the sovereign could not be sued in its own courts and 'there can be no legal right as against the authority that makes the law on which the right depends.' *Kawananakoa* v. *Polyblank,* 205 U.S. 349, 353, 27 S. Ct. 526, 51 L. Ed. 834 (1907); *Bergner* v. *State,* 144 Conn. 282, 284–85, 130 A.2d 293 (1957). This absolute bar of actions against the state has been greatly modified both by statutes effectively consenting to suit in some instances as well as by judicial decisions in others." *Doe* v. *Heintz,* 204 Conn. 17, 31, 526 A.2d 1318 (1987); see also 57 Am. Jur. 2d, Municipal, County, School and State Tort Liability § 61 et seq. (1988).

"It does not necessarily follow, however, that every action in which state officials or members of state agencies are named defendants and designated by official titles should be treated as an action against the state such as to clothe the defendants with immunity from suit." *Simmons* v. *Parizek,* 158 Conn. 304, 307, 259 A.2d 642 (1969). Sovereign immunity does not bar suits against state officials acting in excess of their statu-

tory authority or pursuant to an unconstitutional statute. *Horton* v. *Meskill,* 172 Conn. 615, 624, 376 A.2d 359 (1977).[13]

" 'In those cases in which it is alleged that the defendant officer is proceeding . . . in excess of his statutory authority, the interest in the protection of the plaintiff's right to be free from the consequences of such action outweighs the interest served by the sovereign immunity doctrine. . . .' " Id., quoting J. Block, "Suits Against Government Officers and the Sovereign Immunity Doctrine," 59 Harv. L. Rev. 1060, 1080–81 (1946). In such instances, the need to protect the government simply does not arise and "the government cannot justifiably claim interference with its functions . . . .' " *Horton* v. *Meskill,* supra, 172 Conn. 624. " 'Where[, however,] no substantial claim is made that the defendant officer is acting pursuant to an unconstitutional enactment or in excess of his statutory authority, the purpose of the sovereign immunity doctrine requires dismissal of the suit for want of jurisdiction.' " Id.

In light of these principles, the dispositive issue faced by the trial court in this case in determining whether to dismiss the action on the grounds of sovereign immunity was whether the defendant had allegedly acted in excess of his statutory authority when he terminated

---

[13] This court has also "entertained suits [against state officials] . . . in which declaratory relief is sought as well as related injunctive relief; *Rogan* v. *Board of Trustees for State Colleges,* 178 Conn. 579, 424 A.2d 274 (1979); and also suits seeking only to enjoin state officers from illegal or unconstitutional acts. *Sentner* v. *Board of Trustees,* supra, [184 Conn.] 344–45; see *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 388, 512 A.2d 152 (1986); *Duguay* v. *Hopkins,* 191 Conn. 222, 227 n.4, 464 A.2d 45 (1983). With respect to the . . . injunctive relief sought by the plaintiffs . . . these precedents plainly establish that sovereign immunity is unavailable as a defense . . . ." *Doe* v. *Heintz,* supra, 204 Conn. 31–32; see also *Krozser* v. *New Haven,* 212 Conn. 415, 562 A.2d 1080 (1989), cert. denied, 493 U.S. 1036, 110 S. Ct. 757, 107 L. Ed. 2d 774 (1990).

the plaintiff's employment. Although we have recognized the legal principle that sovereign immunity does not apply to suits against state officials acting in excess of their statutory authority, we have never had occasion actually to apply that doctrine. This case presents the first opportunity to do so. We begin with a discussion of the standard for appellate review of a trial court's dismissal of a complaint for lack of jurisdiction.

"[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." *Amore* v. *Frankel,* 228 Conn. 358, 364, 636 A.2d 786 (1994). "When a [trial] court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light." *Reynolds* v. *Soffer,* 183 Conn. 67, 68, 438 A.2d 1163 (1981). Because this case comes to us on a threshold sovereign immunity issue, pursuant to a motion to dismiss; Practice Book § 143; we do not pass on whether the complaint was legally sufficient to state a cause of action. *Gurliacci* v. *Mayer,* 218 Conn. 531, 544, 590 A.2d 914 (1991). In the posture of this case, we examine the pleadings to decide if the plaintiff has alleged sufficient facts: (1) with respect to sovereign immunity, to support a conclusion that the defendant acted in excess of his statutory authority; and (2) with respect to personal immunity under § 4-165, to support a conclusion that the defendant was acting outside the scope of his employment or wilfully or maliciously. Id., 542; see *Barde* v. *Board of Trustees,* 207 Conn. 59, 64, 539 A.2d 1000 (1988).

The plaintiff maintains that he has met his burden. The defendant argues, however, that the plaintiff's allegation that the defendant had engaged in or had planned to engage in prohibited conduct *after* the plaintiff's dismissal does not constitute an act in excess of authority. Such an argument reflects a formalistic and

myopic view of the complaint and contradicts the modern trend to read pleadings broadly and realistically rather than narrowly and technically. See *Beaudoin* v. *Town Oil Co.*, 207 Conn. 575, 588, 542 A.2d 1124 (1988), and cases cited therein. We conclude that the factual allegations, common to each of the five counts, broadly, rather than narrowly, construed make out a claim that the defendant was acting in excess of his statutory authority when he terminated the plaintiff's employment in order to accomplish that which §§ 6-36 and 6-46 specifically prohibit.

Each of the five counts contained in the complaint expressly states that "[t]he defendant, Alfred J. Rioux did intentionally terminate the plaintiff, Joseph Antinerella for the express purpose of obtaining his business and personally benefitting under the forbidden and illegal fee splitting arrangements he had with appointed deputy sheriffs." The plaintiff also alleged that: (1) the defendant "has engaged in unfair methods of competition and unfair and deceptive acts or practices in the distribution of service of process, the restraint of the [p]laintiff's business, the termination of the [p]laintiff's business and the taking of the [p]laintiff's business for his own personal gain in violation of [General Statutes § 42-110a et seq.]"; (2) "[t]he [d]efendant's tortious interference arises out of his scheme and conspiracy to obtain the [p]laintiff's client list and establish a system by which the customers and clients of the [p]laintiff would thereafter be necessitated or required to use the services of the [d]efendant thereby providing him with personal gain for the [d]efendant's tortious interference with the [p]laintiff's contractual relationships"; (3) the defendant: (a) "[c]onspired to take the [p]laintiff's business"; (b) "[t]erminated the [p]laintiff's license to serve process without good or reasonable cause"; and (c) "[c]onspired with deputy sheriffs to fabricate false accusation and allegations

against [the plaintiff] to use as a basis to terminate [the plaintiff]''; and (4) the ''[d]efendant did engage in activity in violation of [General Statutes § 6-46] of receiving compensation from deputy sheriffs, in fee splitting, which activity was established to provide benefit to the [d]efendant upon [the plaintiff's] termination.'' Construing the pleaded facts in the light most favorable to the plaintiff; *Duguay* v. *Hopkins,* 191 Conn. 222, 227, 464 A.2d 45 (1983); we, therefore, presume that the defendant discharged the plaintiff in order to take his business and personally benefit under the statutorily forbidden and illegal fee splitting arrangement he had made with several appointed deputy sheriffs. That termination of his employment under the facts and circumstances of this case constituted an action in excess of his authority.

The defendant argues that because § 6-45 authorizes him to terminate the employment of deputies at will, his termination of the plaintiff's employment could not have been in excess of his statutory authority. We disagree. Not all uses of that authority are protected. For example, had the defendant used his authority to transport a prisoner, pursuant to General Statutes § 6-32d,[14] for the express purpose of arranging for that prisoner to be assaulted, such intentional criminal behavior would not be shielded. Similarly, despite the sheriff's

[14] General Statutes § 6-32d provides: ''RESPONSIBILITY FOR TRANSPORTATION AND CUSTODY OF PRISONERS. Except as otherwise agreed between the advisory board and the department of correction or other appropriate agency, the responsibility for transportation and custody of prisoners shall be assumed as follows:

''(1) Each high sheriff shall be responsible for the transportation of male prisoners between courthouses within his county and: (A) Community correction centers, until sentencing; (B) other places of confinement after arraignment and until sentencing; and (C) the place of initial confinement, after sentencing. In addition, each high sheriff shall be responsible for the transportation of adult female prisoners between courthouses within his county and community correction centers, not including the correctional institution at Niantic. If such transportation is in other than state vehi-

authority to hire and fire contained in § 6-45, the plaintiff's allegations as set forth in the complaint describe a course of conduct that is egregious in nature.

The defendant also posits that because his appointment of deputy sheriffs is solely within his discretion, deputy sheriffs have no entitlement and, therefore, cannot claim interference with any business interest. In *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980), we provided a public policy exception to the employment at-will rule in an effort to balance the competing interests of employer and employee. The employer must be allowed to make personnel decisions without fear of incurring civil liability. The employee, however, must be protected against actions by his employer that contravene public policy. "Given the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception. [We look to see whether] the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . [or whether] he alleged that his dismissal contravened any judicially conceived notion of public policy." *Morris* v. *Hartford Courant Co.,* 200 Conn. 676, 680, 513 A.2d 66 (1986).

cles, the owner of the vehicle used shall be reimbursed by the state at the rate then established for state employees within the office of policy and management.

"(2) The department of correction shall be responsible for the transportation of adult female prisoners between places of confinement and either courthouses or community correction centers, at the discretion of the commissioner of correction.

"(3) Each high sheriff shall be responsible for the custody of prisoners at courthouses within his county, except that the local police operating any lockup which is designated by the chief court administrator as a courthouse lockup shall be responsible for the custody of prisoners within that lockup. In addition, if such designated lockup is not in the same building as the courthouse serviced by it, the local police operating such designated lockup shall be responsible for escorting prisoners from the lockup to the courthouse. The town in which such a designated lockup is located shall be reimbursed pursuant to section 7-135a."

Application of that doctrine is particularly appropriate under the facts and circumstances of this case when, according to the allegations considered to be true for purposes of the motion to dismiss, the defendant has acted to accomplish what statutes specifically prohibited him from doing. Sections 6-36 and 6-46 reflect the clear public policy that a high sheriff may not engage in fee splitting. It would be totally incongruous for the legislature to prohibit any fee splitting by the high sheriff, but nevertheless for us to allow him to advance the scheme by terminating the plaintiff's employment with total immunity. Sections 6-36 and 6-46 are indicative of the public policy that the defendant's scheme was aimed at circumventing. This case presents claims that genuinely involve the mandates of public policy derived directly from state statutes. "Certainly when there is a relevant state statute we should not ignore the statement of public policy that it represents." *Sheets* v. *Teddy's Frosted Foods, Inc.,* supra, 179 Conn. 480.

Had the plaintiff been the one to discover the defendant's illegal fee splitting scheme and the one to "blow the whistle" on the defendant, and had the defendant thereafter fired the plaintiff in order to continue his illegal conduct, undoubtedly, the plaintiff could bring an action for retaliatory discharge. Id. We see no reason to differentiate between that employee and this plaintiff, whose employment was also terminated in order that his employer could perpetuate a fee splitting arrangement, a scheme clearly prohibited by statute. We reject the defendant's contention that the plaintiff's allegations do not support his claim that his employment had been terminated in violation of a distinct public policy. We are persuaded that the plaintiff's complaint, read so as to sustain its validity, amply charges that "his discharge involve[d] 'impropriety

. . . derived from some important violation of a public policy.' " *Magnan* v. *Anaconda Industries, Inc.,* 193 Conn. 558, 572, 479 A.2d 781 (1984).

Finally, the defendant argues that §§ 6-36 and 6-46, which authorize the removal from office of any high sheriff who engages in fee splitting, were intended by the legislature to provide a sufficient remedy to deter such illegal conduct and to protect deputy sheriffs from such intimidation. According to the defendant, neither statute provides any rights of employment to a deputy, limits the authority of the high sheriff to dismiss deputy sheriffs or allows for private enforcement of their provisions. The defendant further asserts that the ethics commission is empowered to impose the appropriate remedy for violation of General Statutes §§ 1-84 (c) and 1-85. See General Statutes §§ 1-88 and 1-89.

These statutes provide for a public remedy and are indicative of our public policy, consistent with the legislature's obvious interest in ensuring that elected officials conduct themselves within the parameters of the law, that any sheriff who has engaged in this kind of prohibited conduct has abused his authority and deserves to be removed from office.[15] That does not

[15] This is equally true for other persons in law enforcement. General Statutes § 29-9 provides: "ACCEPTANCE OR OFFERING OF GIFTS OR REWARDS BY OR TO STATE OR LOCAL POLICE. (a) Any state police officer appointed as provided in section 29-4, any police officer of any city, town or borough and any person having the power of arrest who, directly or indirectly, receives a reward, gift or gratuity for the purpose of influencing his behavior in office, or any person who gives, offers or promises to a police officer or any person having the power of arrest any reward, gift or gratuity with the intent to influence his behavior in office, shall be fined not more than one hundred dollars or imprisoned not more than six months or both, and the police officer shall be dishonorably discharged from the division of state police or from the police department.

"(b) The provisions of subsection (a) shall not apply to rewards, gifts or gratuities which are approved by the commissioner of public safety, or the

mean, however, that a private remedy for the same conduct can never coexist.

In determining whether a statute prohibiting certain conduct also affords a private cause of action for damages, we generally apply the rule of statutory construction that "[w]hen the legislature has authorized supplementary private causes of action, it has done so expressly. See, e.g., General Statutes §§ 22a-16 (Connecticut Environmental Protection Act) and 42-110g (a) (Connecticut Unfair Trade Practices Act)." *Middletown* v. *Hartford Electric Light Co.*, 192 Conn. 591, 596, 473 A.2d 787 (1984). As part of this analysis, we assess whether the legislature concluded that private interests were amply served without private causes of action. For example, in the area of environmental law, we have examined the administrative regulatory process to see if private persons had been afforded access by way of complaints to the Connecticut department of environmental protection or the council on environmental quality. Id.

Sections 6-36 and 6-46 provide solely for the public's rights to be vindicated through the authority of the Superior Court and the General Assembly to terminate the high sheriff's employment. Although we find nothing in any of the pertinent provisions that specifically prohibits a private cause of action by an injured dep-

police chief or board of police commissioners, as the case may be, and are given to the police officer on account of his official services."

It is mandated that a state police officer be dishonorably discharged if he receives a gratuity for the purpose of influencing his behavior. Therefore, were someone to bribe a state officer to "look the other way" while he assaulted a prisoner in the officer's custody, the officer would be discharged. Although this statute provides for the officer's discharge, and indeed authorizes a fine and imprisonment for this wrongful conduct, there is nothing in its language that suggests that the injured prisoner would not be able to bring an action against the officer. Whether his claim could survive a motion to dismiss based on sovereign immunity would depend strictly on the allegations in his complaint.

uty sheriff whose employment has been terminated by the high sheriff in order to effectuate an illegal purpose, these statutes do "not [expressly] authorize a private cause of action for damages. Thus the plaintiff's action is necessarily at common law." *Boehm* v. *Kish*, 201 Conn. 385, 389, 517 A.2d 624 (1986). We already have recognized the existence of a common law action for an at-will employee whose employment has been terminated in violation of a distinct public policy.

Because this case involves a significant matter of clear and well defined public policy, this plaintiff is no less entitled to a modicum of judicial protection. We conclude that the mandates of public policy derived directly from §§ 6-36 and 6-46 impose some limits on the defendant's unbridled discretion to terminate a deputy's employment and that the plaintiff is entitled to vindicate his claims through a private cause of action.

The " '[p]ublic office [held by the defendant] is a trust conferred by public authority for a public purpose. . . .' " *Gaynor-Stafford Industries, Inc.* v. *Water Pollution Control Authority,* 192 Conn. 638, 648, 474 A.2d 752, cert. denied, 469 U.S. 932, 105 S. Ct. 328, 83 L. Ed. 2d 265 (1984); *State ex rel. Stage* v. *Mackie,* 82 Conn. 398, 401, 74 A. 759 (1909). " 'The rights, authority and duty . . . conferred upon the sheriff by law, clearly invest him with a portion of the sovereign power of the government to be exercised by him for the public good.' " *In re Application of Griffiths,* 162 Conn. 249, 256, 294 A.2d 281 (1972), rev'd on other grounds, 413 U.S. 717, 93 S. Ct. 2851, 37 L. Ed. 2d 910 (1973); *Sibley* v. *State,* 89 Conn. 682, 685, 96 A. 161 (1915). "In the American system, sovereignty is inherent in the people. They can delegate it to a government which they create and operate by law. They can give to that government the power and authority to perform certain duties and furnish certain services. The government so created and empowered must employ

people to carry on its task. Those people are agents of the government. They exercise some part of the sovereignty entrusted to it. They occupy a status entirely different from those who carry on a private enterprise. They serve the public welfare and not a private purpose." *Norwalk Teachers' Assn.* v. *Board of Education,* 138 Conn. 269, 276, 83 A.2d 482 (1951).

Our decision today supports the central statutory purpose of eradicating illegal behavior by people in authority. It also, however, allows persons who have suffered injuries as a result of these illegalities to be made whole. When an elected official acts within the limits of his or her authority, we have little occasion to supervise, review, restrain or punish. *LaTorre* v. *Hartford,* 167 Conn. 1, 9, 355 A.2d 101 (1974); and no reason to circumvent the doctrine of sovereign immunity. When, however, the state employee acts solely to further his or her own illegal scheme and not to carry out government policy, there is no reason to provide immunity from suit. Termination of his or her employment serves one purpose while allowing for damages to flow to the injured party serves another.

Although there is a mounting trend to eliminate the immunity defense in many jurisdictions; see 18 E. McQuillin, Municipal Corporations (3d Ed. Rev. 1993) § 53.02.10, p. 141 n.37; the plaintiff is not seeking judicial abrogation of sovereign immunity. By our decision we do not chip away at the doctrine, relax its parameters or expand any well developed exceptions. Rather than rely on any exception to the rule, we hold simply that the doctrine does not apply when there is a substantial allegation of wrongful conduct to promote an illegal purpose in excess of the officer's statutory authority.

## II

The second issue pertains to the plaintiff's suit against the defendant in his individual capacity. The

defendant claims that he is immune from suit by virtue of General Statutes § 4-165.[16] Section 4-165, however, is implicated only after it has been determined that the state may rightfully be sued. *McKinley* v. *Musshorn,* 185 Conn. 616, 621, 441 A.2d 600 (1981). The trial court determined that because sovereign immunity applied, neither the state nor the defendant individually could be subject to suit. Because we have concluded that the defendant is not shielded by the sovereign immunity doctrine, we must determine what, if any, protection § 4-165 affords the defendant in his individual capacity.

The umbrella of personal immunity provided by § 4-165 applies only to a state officer or employee who causes injury or damage while acting "within the scope of his [or her] employment." We have interpreted similar language in the context of an action, pursuant to General Statutes § 53-39a, for indemnification by an officer against his employing governmental unit for economic loss he sustained in successfully defending himself against the state's prosecution for a crime he had allegedly committed while acting " 'in the course of his duty' " as an officer. *Link* v. *Shelton,* 186 Conn. 623, 627, 443 A.2d 902 (1982). In interpreting the phrase "in the course of his duty" as used in § 53-39a, we focused on whether the employee was reasonably fulfilling the duties of employment or doing something incidental to it. Id. In light of the allegations that the defendant's wrongful conduct was intended to effectuate an illegal fee splitting scheme for which the defendant himself could be fired, it would be inconsistent and inappropriate for us to consider such conduct by the defendant to be incidental to his employment as high sheriff or beneficial to the government as his employer.[17]

---

[16] See footnote 8.

[17] In *Brown* v. *Housing Authority,* 23 Conn. App. 624, 583 A.2d 643 (1990), cert. denied, 217 Conn. 808, 585 A.2d 1233 (1991), a case brought under

The defendant argues that when he terminated the plaintiff's employment, he was merely using his authority pursuant to § 6-45 and that he, therefore, was still acting within the scope of his employment. Once again, the defendant's misuse of his authority was personal to him and was not " 'primarily employer rooted' " or "reasonably incidental to the performance of employment duties." *Manale* v. *Dept. of Police,* 673 F.2d 122, 126 (5th Cir. 1982). The defendant's alleged conduct was not designed to advance any interest of his employer, the state, and did not serve any legitimate state interest. Rather, the defendant's alleged actions were motivated by purely personal considerations entirely extraneous to his employer's interest. Therefore, we conclude that § 4-165, by its own

the theory of respondeat superior for damages suffered as a result of an assault and battery committed by the defendant's employee, the Appellate Court applied the master-servant doctrine to decide whether the defendant was acting "within the scope of his employment" when he assaulted the plaintiff. " ' "A master is liable only for those torts of his servant which are done with a view of furthering his master's business within the field of this employment—for those which have for their purpose the execution of the master's orders or the doing of the work assigned to him to do." ' *Bradlow* v. *American District Telegraph Co.,* 131 Conn. 192, 196, 38 A.2d 679 (1944); *Turner* v. *American District Telegraph & Messenger Co.,* 94 Conn. 707, 110 A. 540 (1920)." *Brown* v. *Housing Authority,* supra, 628. Although it is more often " 'the function of the jurors to determine from the facts before them whether, under this test, a servant was acting within the scope of his employment,' " the Appellate Court noted that sometimes the acts of a servant are " 'so clearly without the scope of his authority that the question is one of law.' " Id., quoting *Bradlow* v. *American District Telegraph Co.,* supra, 195.

The Appellate Court concluded that the employee's "intentional, criminal acts were in no way connected to the defendant's business." *Brown* v. *Housing Authority,* supra, 23 Conn. App. 628. " ' "In the course of his employment" means while engaged in the service of the master, and it is not synonymous with the phrase "during the period covered by his employment." ' *Levitz* v. *Jewish Home for Aged, Inc.,* 156 Conn. 193, 198, 239 A.2d 490 (1968)." *Brown* v. *Housing Authority,* supra, 23 Conn. App. 628; see also *Mitchell* v. *Resto,* 157 Conn. 258, 262, 253 A.2d 25 (1968) ("it must be the affairs of the principal, and not solely the affairs of the agent, which are being furthered in order for the doctrine to apply").

explicit and unambiguous terms, provides the defendant with no protection from suit.[18]

The trial court relied on § 6-45 as a blanket authorization for the defendant "to dismiss deputies at his pleasure regardless of his motives or the propriety of his reasons for such dismissal." The trial court noted that § 6-45 expressly authorized the defendant to terminate the plaintiff's employment. The trial court reasoned, therefore, that the defendant could not be personally liable when acting in his official capacity with express authority. We have already concluded that § 6-45 is not authorization to act for an illegal purpose and that sovereign immunity will not protect the defendant against the allegations that he acted in excess of his authority. We hold that personal immunity provided by § 4-165 is likewise unavailable. We conclude, therefore, that the trial court should not have dismissed the plaintiff's action brought against the defendant individually.

The judgment is reversed, and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.

---

[18] In light of our resolution of this case on the ground that the defendant acted outside the scope of his employment, we need not address the plaintiff's claim that General Statutes § 4-165 does not protect a state officer who has exhibited "wanton, reckless or malicious" conduct.