BLUE, J.
 

 The distinction between a public officer’s personal and official acts has confounded courts for centuries. That distinction must be articulated here in the context of a now epic dispute between the defendant, Alfred J. Rioux, the former high sheriff of Hartford county, and the plaintiff, Joseph Antinerella, his former deputy.
 

 This question comes before me on the defendant’s motion for summary judgment. The submissions of the parties reveal that there is no genuine issue as to any material fact. The issue presented, at least at this early stage, is one of law.
 

 The relevant facts can be briefly stated. At the time of the events in question, the defendant was the high sheriff of Hartford county. The plaintiff once worked for the defendant as a deputy, but the defendant fired him in 1991. See
 
 Antinerella
 
 v.
 
 Rioux,
 
 229 Conn. 479, 481, 642 A.2d 699 (1994)
 
 (Antinerella I).
 
 In 1994, the defendant ran unsuccessfully for reelection. During the nominating stage of the campaign, the defendant met with delegates to the nominating caucuses of his party. The meeting took place in a restaurant. During the course of the meeting, the subject of the plaintiffs status came up for discussion. The plaintiff alleges that the defendant was asked why he had fired the plaintiff. The defendant’s submissions suggest that he was asked if he would rehire the plaintiff. (As will be seen, the difference between these versions is unimportant for the puiposes of the question at hand.) The defendant responded that the plaintiff was behind in his child support payments and had a drug problem. The plaintiff claims that this statement was defamatory.
 

 
 *372
 
 The question of whether the plaintiff has actually been defamed is not now before me. The question presented at this preliminary stage is, assuming that the defendant’s remarks were defamatory, were they uttered by the defendant as an individual or the defendant as high sheriff? This question has arisen because the plaintiffs writ names the defendant as a defendant under both nomenclatures and because his complaint is pleaded in separate counts, alleging various tort violations by, respectively, “Alfred J. Rioux” and “Alfred J. Rioux as High Sheriff.” The defendant, who is represented by separate counsel in his separate nomenclatures, has moved for summary judgment in his nomenclature as high sheriff only. He does not, at least now, challenge the counts directed against him as an individual. His position is that he did not do the alleged acts as high sheriff.
 

 Before the issue presented can be directly confronted, some confusing underbrush must be cleared away. First, this case does not involve the difference between personal and official capacity lawsuits, or at least it does not involve that difference in the way that it is usually litigated in federal-civil rights actions. The question here concerns the nature of the defendant’s
 
 acts.
 
 This is a vital distinction. “[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official’s office. ... As such, it is no different from a suit against the State itself.” (Citation omitted.)
 
 Will
 
 v.
 
 Michigan Dept. of State Police,
 
 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). “[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.”
 
 Kentucky
 
 v.
 
 Graham,
 
 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). For this reason, a government entity is hable in an official capacity suit brought under 42 U.S.C. § 1983 only when the entity’s policy or custom played
 
 *373
 
 a part in the violation of federal law. Id. Even in a § 1983 action, however, a personal capacity suit may properly “seek to impose individual liability upon a government officer for actions taken under color of state law.”
 
 Hafer
 
 v.
 
 Melo,
 
 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). As will be seen, the same may be done in a state law tort action.
 

 There are thus three categories of lawsuits against government officers: (1) official capacity suits that are, in reality, suits against the government itself; (2) personal capacity suits against government officers for official acts; and (3) personal capacity suits against government officers for personal acts. This suit is not a category one suit. If it were, the defendant’s departure from office would necessarily require substitution of his successor in office.
 
 Kentucky
 
 v.
 
 Graham,
 
 supra, 473 U.S. 166 n.11. That has not happened here. This is a personal capacity suit, and it is the distinction between categories two and three that is at issue here. This latter distinction is of more than formalistic importance. Even if the government itself is not the actual defendant, the distinction may well determine which pocket the plaintiff in the present case must look to for payment in the event that he is successful. That is because sheriffs are statutorily required both to execute bonds and to carry personal liability insurance to cover damages caused by their official acts.
 

 General Statutes § 6-30 requires a high sheriff to execute a bond of $10,000 to “answer all damages which any person may sustain by his unfaithfulness, malfeasance, wrongdoing, misfeasance or neglect . . . .” Although the text of § 6-30 requires the bond to be “payable to the state,” it is established that an injured person who has recovered a judgment against a sheriff and has had her execution returned unsatisfied may bring an action directly against the surety on the bond.
 
 MacDonald
 
 v.
 
 Standard Accident Ins. Co.,
 
 19 Conn.
 
 *374
 
 Sup. 257, 263, 111 A.2d 347 (1955). In addition, General Statutes § 6-30a requires each high sheriff and deputy sheriff “to carry personal liability insurance for damages caused by reason of his tortious acts” in an amount of at least $100,000 “[flor damages caused to any one person. . . .” Section 6-30a further provides that the covered acts include only acts “committed in the performance of the official duties of such sheriff or deputy sheriff.” Section 6-30athus incorporates the distinction between category two and category three suits discussed above. The required personal liability insurance plainly exists to pay judgments rendered against a sheriff in his personal capacity — -it is “personal” liability insurance, carried by the individual — but it can only be used to pay damages caused by official acts. The distinction between official and personal acts is, consequently, of considerable importance in the present case.
 

 It should also be noted that the issue presented here does not involve the defense of immunity — at least not yet, since the defendant has yet to file his answer. Thus the question of whether the defendant acted within the scope of his employment for purposes of Barr v.
 
 Matteo,
 
 360 U.S. 564, 79 S. Ct. 1335, 3 L. Ed. 2d 1434 (1959), and its progeny need not be addressed at this time. The question is whether the defendant can be sued for his conduct “as High Sheriff’ in the first place.
 

 With this underbrush cleared away, the issue presented may now be addressed. Did the defendant utter his allegedly defamatory words “as High Sheriff?” The defendant claims that he did not. He argues that his authority and duties are statutorily defined; see, e.g., General Statutes §§6-31 and 6-32; and that that authority and those duties do not involve running for reelection. Consequently, he reasons, whatever he did while running for reelection was ipso facto done as a private citizen. The plaintiff counters with alternative arguments. First, and most ambitiously, he argues that the
 
 *375
 
 office of high sheriff is not a nine to five job and that the person holding this position is never separated from his title. In consequence, he reasons, whatever the defendant did during the course of his term was necessarily done as high sheriff. In a more limited fallback argument, the plaintiff claims that even if the defendant could perform some acts in his purely personal capacity, the act in question here was not of that description. Rather, when he made the remarks in question, he was acting under color of office of high sheriff. For the reasons set forth below, the court agrees with the plaintiffs fallback position.
 

 The plaintiffs first argument cannot be sustained. Even though the position of high sheriff is plainly not a nine to five job, it hardly follows that everything done by a person holding that position during his term of office is done as high sheriff. As already mentioned, the legislature, in enacting § 6-30a, has recognized the distinction between a high sheriffs official and personal acts. If, to take an obvious example, the high sheriff, while driving his personal car to church on Sunday, goes through a red light and causes an automobile accident, it could hardly be said that this was an official act. To take another example, much closer to the facts of the present case, if the high sheriff dines in a restaurant with members of his family and defames a neighbor with whom he has a personal dispute, this would not be an official act either. Our law plainly contemplates that the high sheriff, like any other public officer, is capable of performing purely personal acts during his term of office.
 

 The act in question here, however, cannot fairly be termed a purely personal act. As the plaintiff correctly points out, the defendant was either (depending on the exact version of events that is believed) commenting on his reasons for firing the former deputy sheriff or on his reasons for not rehiring him. In making these
 
 *376
 
 remarks, the defendant was plainly speaking in his capacity as high sheriff. The defendant, as high sheriff, had the statutory authority to “appoint deputies to act under him. . . .” General Statutes § 6-37. In 1991, he also had the statutory authority “at his pleasure, [to] dismiss from office the deputies appointed by him . . . .” General Statutes (Rev. to 1991) § 6-45, amended by 1994 Public Acts, No. 94-177, § 6. If the defendant had been a nonincumbent campaigning for election as high sheriff, he would not have been in a position to make these remarks because he would not have had the employer-former employee relationship with the plaintiff that he had by virtue of actually holding the office of high sheriff. This would have been the case even if he had been a nonincumbent vowing that, if elected, he would not hire the plaintiff after taking office. Even in that event, he would not be speaking as the plaintiffs former employer. In this case, however, the defendant was speaking as an incumbent and a former employer. In that capacity, he spoke as high sheriff.
 

 The undoubted fact that the statutorily defined duties of the high sheriff do not include the defamation of others does not change this analysis. In drafting § 6-30a, which, as already discussed, requires sheriffs and their deputies to carry personal liability insurance, the legislature has specifically included “libel, slander, [and] defamation of character” in the list of “tortious acts” that the required insurance must cover. The legislature has thus expressly contemplated the possibility that a sheriff can defame another person in the performance of his offical duties.
 

 The defendant agrees with the basic proposition that a sheriffs official acts include those done “in his official capacity under color and by virtue of his office. ” Black’s Law Dictionary (6th Ed. 1990) 1084. The problem with his argument is that it focuses on a sheriffs statutorily defined duties and thus overlooks the fact that acts that
 
 *377
 
 are not part of those statutorily defined duties may nevertheless be done “under color” of the sheriffs office. “When an elected official acts within the limits of his or her authority, we have little occasion to supervise, review, restrain or punish.”
 
 Antinerella I,
 
 supra, 229 Conn. 497. As the Supreme Judicial Court of Massachusetts explained in an influential early opinion, “an official act does not mean what the [sheriff] might lawfully do in the execution of his office; if so, no action would ever lie against the sheriff for the misconduct. ... It means, therefore whatever is done under colour or by virtue of his office.”
 
 Knowlton
 
 v.
 
 Bartlett,
 
 18 Mass. (1 Pick.) 271, 274 (1822).
 

 Modern law on this subject has been formulated after one hundred years of confusion.
 
 Greenius
 
 v.
 
 American Surety Co.,
 
 92 Wash. 401, 404, 159 P. 384 (1916). To state briefly a tortuously complicated matter, an eighteenth century British judge, Lord Kenyon, in an imperfectly reported opinion, distinguished between acts done colore officii and acts done virtute officii.
 
 Alcock
 
 v.
 
 Andrews,
 
 170 Eng. Rep. 449 n.* (1788). The basic idea was that acts done virtute officii are done within the authority of the officer, while acts done colore officii are acts that the office gives no authority to do. Some early American cases adopted this distinction; e.g.,
 
 Ex parte Reed,
 
 4 Hill 572 (N.Y. 1843); but it soon became impossible to apply. If, to take a common example, a sheriff has a legal warrant to seize the goods of A but instead seizes the goods of B, does he do so virtute officii or colore officii? In
 
 People
 
 v.
 
 Schuyler, 4
 
 N.Y. 173 (1850), the New York Court of Appeals rejected this distinction, and with some periodic sputtering, an irreversible doctrinal trend had begun. The Supreme Court of the United States followed
 
 Schuyler
 
 in
 
 Lammon
 
 v.
 
 Feusier,
 
 111 U.S. 17, 4 S. Ct. 286, 28 L. Ed. 337 (1884), holding that an oficer who has attached, for example, the wrong person’s goods has committed an
 
 *378
 
 official act and may be sued on a bond given for the faithful performance of the duties of his office. The Connecticut Supreme Court subsequently adopted
 
 Lammon
 
 for purposes of Connecticut law in
 
 Norwalk
 
 v.
 
 Ireland,
 
 68 Conn. 1, 7-8, 35 A. 804 (1896).
 
 Lammon
 
 and
 
 Ireland
 
 remain the law today.
 

 In light of
 
 Lammon
 
 and
 
 Ireland,
 
 the question that must be addressed here is not whether the defendant’s act was statutorily authorized but whether it was done under color of his office. As Black’s Law Dictionary points out, acts done under color of law include not only acts done within the bounds of lawful authority but acts done beyond the bounds of that authority, provided that “the unlawful acts must consist in an abuse or misuse of power which is possessed by the official only because he is an official. . . .’’Black’s Law Dictionary (6th Ed. 1990) 266.
 

 A recent scholarly article has demonstrated that this modem analysis of acts done “under color” of office has exceptionally deep roots and, interestingly enough, was originally formulated by early English authorities to deal with the specific problem of sheriffs. S. Winter, “The Meaning of ‘Under Color of Law,” 91 Mich. L. Rev. 323, 342-46 (1992). A fifteenth century statute prohibited sheriffs from doing certain prohibited acts “by colour of their office. . . .” 23 Hen. 6, c. 10, § 7 (1444).
 
 In Dive v. Maningham,
 
 75 Eng. Rep. 96, 109 (C.P. 1551), Chief Justice Mountague held that the phrase “by colour of their office” encompassed legally unauthorized acts. The question to be addressed was not legal authorization but whether the sheriff did the act in question “as sheriff.” Id., 108. The phrase “colour of office,” the Chief Justice explained, “signifies an act badly done under the countenance of an office . . . .” Id.
 

 The more things change, the more they remain the same. Our legal system is still confronted with the problem of public officers who perform unauthorized acts,
 
 *379
 
 and reflections of the early analysis of
 
 Dive
 
 can be found in the law today. The modem understanding of acting under color of law requires that the officer in question “have exercised power ‘possessed by virtue of . . . law and made possible only because the wrongdoer is clothed with the authority of . . . law.’ ”
 
 West
 
 v.
 
 Atkins,
 
 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988), quoting
 
 United States
 
 v.
 
 Classic,
 
 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941).
 

 This analysis makes it clear, at least at this preliminary stage of the proceedings, that when the defendant made his allegedly defamatory statement, he did so “as High Sheriff.” The defendant not only held the office of high sheriff at the time, but he was discussing an administrative decision that — depending on the version of events that is believed — he had either made as high sheriff or was being asked to make in that capacity. The fact that his statutorily defined duties include neither mnning for reelection nor uttering defamatory statements is unimportant. The statements were made while the defendant was clothed with the authority of his office.
 

 For the reasons set forth above, the defendant’s motion for summary judgment is denied.